

**Kevin C. Cottone**

1650 Market Street | One Liberty Place, Suite 1800 | Philadelphia, PA 19103
Direct 215.864.7108 | Fax 215.789.7617
cottonek@whiteandwilliams.com | whiteandwilliams.com

July 17, 2024

Hon. Justin T. Quinn
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> **RE:** **Craig Francis Szemple v. Rutgers University, et al.**
> **Case No. 3:19-cv-13300-ZNQ-JTQ**

Dear Judge Quinn:

I represent Defendants Saint Francis Medical Center ("SFMC") and Rajiv K. Shah, M.D. (collectively, "St. Francis Defendants") in this matter involving, inter alia, medical malpractice. Plaintiff, Craig Francis Szemple, filed a letter consenting to consolidation of two distinct causes of action, Case Numbers 3:19-cv-13300 and 3:19-cv-12746. On July 1, 2024, this Honorable Court entered an Order directing all parties to file any opposition to said consolidation via letter by July 19, 2024. See July 1, 2024 Text Order, Exhibit "A". Please accept this letter as the St. Francis Defendants' opposition to consolidation.

## I.     Background

Plaintiff initiated Case No. 3:19-cv-13300 by filing of a Complaint on May 21, 2019. Both SFMC and Dr. Shah were named as Defendants. Plaintiff filed an Amended Complaint on October 27, 2021. See Amended Complaint, Exhibit "B".  On October 5, 2022, this Court granted Defendants' Motion for Extension of Time to File Response to the Complaint, extending their deadline to November 4, 2022. On October 12, 2022, Defendants filed a Motion for Joinder in the Motions to Dismiss Plaintiff's First Amended Complaint with Prejudice Filed by Co-Defendants. On September 18, 2023, this Court entered an Order staying all dispositive motions pending the resolution of the limited issues for which Plaintiff was appointed pro bono counsel. See September 18, 2023 Text Order, Exhibit "C". The basis for the pending motion to dismiss in Case Number 3:19-cv-13300 is Plaintiff's failure to timely file suit within the applicable statute of limitations.

Plaintiff also initiated Case No. 3:19-cv-12746 by filing of a Complaint on May 21, 2019. Plaintiff filed an Amended Complaint on October 4, 2021. See Amended Complaint, Exhibit "D". Dr. Shah is not named as a Defendant. Notably, SFMC was named as a Defendant but was *never served*, as evidenced by the lack of Return of Summons for SFMC on the civil docket. See

Hon. Justin T. Quinn
July 17, 2024
Page 2

Civil Docket dated July 11, 2024, Exhibit "E". SFMC was not even aware there was a second cause of action pending until this Case Number was referenced by a co-defendant during a court-mandated conference in Case No. 3:19-cv-13300.

Pro bono counsel was appointed for two limited purposes, assisting Plaintiff in determining whether he can obtain an appropriate affidavit of merit and ascertaining whether the Complaint filed in Case No. 3:19-cv-13300 is duplicative of the Complaint in Case No. 3:19-cv-12746. Pro bono counsel was ordered to submit correspondence explaining why the later-filed Complaint was not duplicative. Pro bono counsel submitted that there is "substantial overlap between the two claims," but "they do raise separate factual contentions and implicate different legal issues." See June 26, 2024 Correspondence, Exhibit "F". Nevertheless, Plaintiff consented to consolidation of the matters. Id. Defendants respectfully oppose consolidation of Case Nos. 3:19-cv-13300 and 3:19-cv-12746.

## II.    Legal Argument

First, Dr. Shah is not a Defendant in Case No. 3:19-cv-12746. Courts treat motions to consolidate cases involving different defendants analogous to a request for joinder of parties under Rule 20. Turner v. Johnson, 2017 U.S. Dist. LEXIS 198602 (D.N.J. 2017). Rule 20 "is not a license to join unrelated claims and defendants in one lawsuit." Paladino v. Newsome, No. 12-2021, 2012 U.S. Dist. LEXIS 113748, 2012 WL 3315571 (D.N.J. 2012). Cases arising out of distinctly separate incidents cannot be consolidated "as the finding of liability by the jury in one case may unduly influence the question of liability in the other case." Turner v. Johnson. Importantly, the Amended Complaint in Case No. 3:19-cv-12746 does not mention Dr. Shah or any SFMC provider by name and describes wrongdoing only on the part of "staff working in the hospital's prison unit" rather than by "surgeons at SFMC," which presumably includes Dr. Shah. Exhibit "D", ¶ 40. As described further below, Dr. Shah had no role in the alleged incident giving rise to the claims in Case No. 3:19-cv-12746, nor does Plaintiff's Amended Complaint assert as such, so consolidation could unduly influence the jury as to the question of Dr. Shah's liability for the allegations in Case No. 3:19-cv-13300.

Consolidating the two cases here would effectively provide Plaintiff an opportunity to untimely add Dr. Shah as a defendant in Case No. 3:19-cv-12746 in circumvention of the Federal Rules of Civil Procedure. Under Fed. R.Civ.P. 15(c)(1), an amendment relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;
(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

Hon. Justin T. Quinn
July 17, 2024
Page 3

> (i)     received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

New Jersey law concerning the statute of limitations, N.J.R. 4:26-4, permits a plaintiff to later amend his complaint to replace fictitious names with the names of the real defendants. Dr. Shah is not a fictitious defendant named in Plaintiff's Complaint as Plaintiff does not identify any John Doe as a surgeon or physician at SFMC, nor does Plaintiff have any argument that he determined Dr. Shah's identity after the running of the statute of limitations, particularly given that he named Dr. Shah as a defendant in his other case initiated on the same day. See Walls v. County of Camden, 2008 U.S. Dist. LEXIS 92490 (D.N.J. 2008).

Fed. R.Civ.P. 15(c)(1)(C) and New Jersey's relation back rule are almost identical. Id. Even if an amended pleading filed at this point were deemed to relate back to Plaintiff's original, timely-filed Complaint, Plaintiff has no grounds on which to establish that Dr. Shah had sufficient notice of Case No. 3:19-cv-12746. In fact, SFMC was not even aware of the second action until 2023. Dr. Shah has no reason to believe that "but for a mistake" he would have been named in Case No. 3:19-cv-12746. See Id. Accordingly, there is no justification to enable Plaintiff to add Dr. Shah in the second action.

Additionally, because SFMC itself has never been served in Case No. 3:19-cv-12746, it intends to move to dismiss for improper service under Fed. R.Civ.P. 12(b)(5) and 4(m). Well over 90 days of passed since the Amended Complaint was filed; in fact, over 1000 days have gone by without successful service of process. Additionally, the statute of limitations has expired. There is no evidence of any good cause for Plaintiff's failure to serve SFMC. Plaintiff should have no further opportunity to serve SFMC. Consolidating the claims would unduly prejudice SFMC as it should not be required to defend an action in which it was never properly served.

Consolidation is further inappropriate as Plaintiff himself admitted that the two claims "raise separate factual contentions and implicate different legal issues." See Exhibit "F". Under Fed. R.Civ.P. 42(a), the court may consolidate actions which share a common question of law or fact. It is clear Plaintiff is pursuing two separate actions in that he has filed two Complaints with markedly different questions of fact, legal issues and even defendants. A brief review of the Complaints illustrates that Plaintiff's claims against Defendants in Case No. 3:19-cv-13300 relate to treatment and recurrence of a right inguinal hernia leading up to and including November 28, 2016, while his claims against SFMC in Case No. 3:19-cv-12746 relate to an alleged incident that occurred during transport from Northern State Prison to SFMC on October 15, 2018. See, e.g., Exhibit "B", ¶ 28 and Exhibit "D", ¶¶ 40-42.

The St. Francis Defendants have already filed a Motion to Dismiss in Case No. 3:19-cv-13300, wherein they were both named and, eventually, served. In Case No. 3:19-cv-12746, one of the St. Francis Defendants, Dr. Shah, is not named at all. The other St. Francis Defendant, St.

Hon. Justin T. Quinn
July 17, 2024
Page 4

Francis Medical Center, has never been served, giving rise to valid, independent grounds for dismissal. The proposed consolidation of these cases with separate factual and legal issues would cause undue prejudice to the St. Francis Defendants and conflict with the Federal Rules of Civil Procedure. For the foregoing reasons, the St. Francis Defendants respectfully request that this Honorable Court maintain Plaintiff's two separate causes of action rather than consolidating Cases No. 3:19-cv-13300 and 3:19-cv-12746.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

Kevin C. Cottone

KCC:vlk


cc: all counsel of record via ECF

Attachments

33090211v.1

# EXHIBIT "A"

**Kager, Victoria**

**Subject:**          Activity in Case . SZEMPLE v. RUTGERS UNIVERSITY et al Text Order

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

U.S. District Court

District of New Jersey [LIVE]

## Notice of Electronic Filing

The following transaction was entered on 7/1/2024 at 4:55 PM EDT and filed on 7/1/2024

**Case Name:**      SZEMPLE v. RUTGERS UNIVERSITY et al
**Case Number:**    3:19-cv-12746-PGS-JTQ
**Filer:**
**Document Number:** 78(No document attached)

**Docket Text:**
**TEXT ORDER: Pursuant to the June 27, 2024 conference call, the Parties are directed to continue discussing proposed language for the discovery confidentiality order, so the relevant production can be provided and the affidavit of merit issue can be resolved. Furthermore, any opposition to Plaintiff's consolidation request shall be filed via letter by July 19, 2024. To the extent Plaintiff wishes to reply, Plaintiff shall file a letter with the Court requesting the amount of time needed to submit his response. So Ordered by Magistrate Judge Justin T. Quinn on 7/1/2024. (eh, )**

**Case Name:**      SZEMPLE v. RUTGERS UNIVERSITY et al
**Case Number:**    3:19-cv-13300-PGS-JTQ
**Filer:**
**Document Number:** 88(No document attached)

**Docket Text:**
**TEXT ORDER: Pursuant to the June 27, 2024 conference call, the Parties are directed to continue discussing proposed language for the discovery confidentiality order, so the relevant production can be provided and the affidavit of merit issue can be resolved. Furthermore, any opposition to Plaintiff's consolidation request shall be filed via letter by July 19, 2024. To the extent Plaintiff wishes to reply, Plaintiff shall file a letter with the Court requesting the amount of time needed to submit his response. So Ordered by Magistrate Judge Justin T. Quinn on 7/1/2024. (eh, )**

**3:19-cv-12746-PGS-JTQ Notice has been electronically mailed to:**

ANELIA DIKOVYTSKA BROWN     adb@morlawnj.com, glr@morlawnj.com, npy@morlawnj.com

ETHAN JOSHUA LILLIANTHAL     el@morlawnj.com

GARY L. RIVELES     glr@morlawnj.com, griveles@gmail.com, jmw@morlawnj.com, mrs@morlawnj.com, npy@morlawnj.com

HARRIS SCOTT FELDMAN     HSF@njatty.com, EReyes@njatty.com, Rdubli@njatty.com

MATTHEW C WELLS     mcwells@norris-law.com

NICHOLAS FRANCIS PELLITTA     nfpellitta@norris-law.com, NMLitDocket@norris-law.com

**3:19-cv-12746-PGS-JTQ Notice has been sent by regular U.S. Mail:**

THOMAS J. PYLE , JR
MAC NEILL O'NEILL & RIVELES LLC
240 CEDAR KNOLLS ROAD
SUITE 104
CEDAR KNOLLS, NJ 07927

**3:19-cv-13300-PGS-JTQ Notice has been electronically mailed to:**

ADAM J. ORTLIEB     ortlieba@whiteandwilliams.com, cosgroveb@whiteandwilliams.com

ANELIA DIKOVYTSKA BROWN     adb@morlawnj.com, glr@morlawnj.com, npy@morlawnj.com

ETHAN JOSHUA LILLIANTHAL     el@morlawnj.com

GARY L. RIVELES     glr@morlawnj.com, griveles@gmail.com, jmw@morlawnj.com, mrs@morlawnj.com, npy@morlawnj.com

HARRIS SCOTT FELDMAN     HSF@njatty.com, EReyes@njatty.com, Rdubli@njatty.com

KEVIN C. COTTONE     cottonek@whiteandwilliams.com, hutchinsonl@whiteandwilliams.com, melchiorred@whiteandwilliams.com

MATTHEW C WELLS     mcwells@norris-law.com

MICHAEL A. ARMSTRONG     maa@armstronglawfirm.com, fya@armstronglawfirm.com

NICHOLAS FRANCIS PELLITTA     nfpellitta@norris-law.com, NMLitDocket@norris-law.com

RAAJEN BHASKAR (do not use)     Raajen.Bhaskar@law.njoag.gov, r.bhaskar@verizon.net, Raajen@RogersJung.com

**3:19-cv-13300-PGS-JTQ Notice has been sent by regular U.S. Mail:**

THOMAS J. PYLE , JR
MAC NEILL O'NEILL & RIVELES LLC

2

240 CEDAR KNOLLS ROAD
SUITE 104
CEDAR KNOLLS, NJ 07927

# EXHIBIT "B"

Craig F. Szemple, pro se
Northern State Prison
168 Frontage Road
P.O. Box 2300
Newark, NJ  07114

| | | |
|---|---|---|
| CRAIG FRANCIS SZEMPLE, | : | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY |
| Plaintiff, | : | |
| | | No. 19-13300 (JMV)(JBC) |
| v. | : | |
| GARY LANIGAN; RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, UNIVERSITY CORRECTIONAL HEALTH CARE; DR. ART BREWER; DR. WILLIAM BRIGLIA; MICHELLE RICCI; GEORGE ROBINSON; DR. SANDRA CONNELLY; DR. SHARMALIE PERERA; DR. HESHAM SOLIMAN; SCO GONZALEZ; ST. FRANCIS MEDICAL CENTER; DR. RAJIV SHAH; JOHN DOE ##1-3; and JANE DOE ##1-3, individually, jointly, and severally, | : : : : : : | Civil Action  FIRST AMENDED COMPLAINT AND JURY DEMAND |
| Defendants. | : | |

Preliminary Statement

Plaintiff Craig Francis Szemple, by way of Complaint against Gary Lanigan;

Rutgers, The State University of New Jersey, University Correctional Health Care; Dr.

Art Brewer; Dr. William Briglia; Michelle Ricci; George Robinson; Dr. Sandra Connelly;

Dr. Sharmalie Perera; Dr. Hesham Soliman; SCO Gonzalez; Dr. Rajiv Shah; St. Francis

Medical Center; John Doe ##1-3; and Jane Doe ##1-3 (hereinafter collectively referred to

as "Defendants"), says:

<u>Parties</u>

1.    Plaintiff Craig Francis Szemple is a prisoner committed to the custody and care of the New Jersey Department of Corrections.  He is currently confined at Northern State Prison, 168 Frontage Road, P.O. Box 2300, Newark, NJ  07114.

2.    Defendant Gary Lanigan is the former Commissioner of the New Jersey Department of Corrections (NJDOC) and at all times herein was responsible for plaintiff's safe custody and care.

3.    Defendant Rutgers, The State University of New Jersey, University Correctional Health Care (UCHC) is believed to be an entity that is employed/contracted by the NJDOC to provide health care services to plaintiff.

4.    Defendant Art Brewer, MD, is believed to be employed/contracted by UCHC and at all times herein was responsible for providing health care services to plaintiff.

5.    Defendant William Briglia, MD, is believed to be employed/contracted by UCHC and at all times herein was responsible for providing health care services to plaintiff.

6.    Defendant Michelle Ricci is an employee of the NJDOC and at all times herein was responsible for plaintiff's safe custody and care.

7.    Defendant George Robinson is an employee of the NJDOC and at all times herein was responsible for plaintiff's safe custody and care.

8.    Defendant Sandra Connolly, MD, is believed to be employed/contracted by UCHC and at all times herein was responsible for providing health care services to plaintiff.

9.    Defendant Sharmalie Perera, MD, is believed to be employed/contracted by UCHC and at all times herein was responsible for providing health care services to plaintiff.

10.    Defendant Hesham Soliman, MD, is believed to be employed/contracted by UCHC and at all times herein was responsible for providing health care services to plaintiff.

11.    Defendant SCO Gonzalez, is believed to be employed by the NJDOC UCHC and at all times herein was responsible for plaintiff's safe custody and care.

12.    Defendant St. Francis Medical Center (SFMC) is an entity believed to have been employed/contracted by the NJDOC or UCHC responsible for providing ancillary health care services to the NJDOC and to plaintiff.

13.    Defendant Rajiv Shah, MD, is believed to be employed/contracted by UCHC or SFMC and at all times herein was responsible for providing health care services to plaintiff.

14.    Defendants John Doe ##1-3 and Jane Doe ##1-3 are fictitious names of individuals who were either responsible for plaintiff's safe custody and care or responsible for providing healthcare services to plaintiff.

Factual Background

15.    Plaintiff was committed to the custody and care of the NJDOC in or around 1994 and was housed for a number of years at the New Jersey State Prison (NJSP). Plaintiff has since been transferred back-and-forth to various prison facilities, including East Jersey State Prison (EJSP), Northern State Prison (NSP), and South Woods State Prison (SWSP).  He is currently housed at NSP.

3

16. Plaintiff entered the NJDOC without any specific abdominal complaints and in overall excellent health, however, during the course of confinement he developed a number of medical problems. This includes diagnoses for duodenal ulcers, anemia, prediabetes, ulnar nerve entrapment, hypertension, hypercholesterolemia, and coronary artery disease requiring open heart surgery in 2001 to perform a quadruple bi-pass.

17. Additionally, plaintiff has been diagnosed with arthritis with arthropathy of the left shoulder, effusion of the left and right knees, total left knee replacement, and degenerative spinal disease confirmed by multiple MRIs of the cervical and lumbar regions of his spine. The MRI evidence reveals prominent degenerative disease with major changes at the C-5, C-6 with thecal sac narrowing, cord impingement and narrowing of left-foramina, spondylosis, and disc bulging in the lumbar region of the spine.

### Hernia Diagnoses

18. In or around 2013 plaintiff reported to medical staff the onset of pain in his left groin. He waited nearly four months for an evaluation to be performed. On April 3, 2013, plaintiff was diagnosed with a left inguinal hernia following a CAT scan. A recommendation was made to surgically repair the hernia, but this recommendation was ignored by the prison's healthcare unit.

19. Plaintiff continued to complain of pain from the hernia, and repeatedly requested treatment, indicating that the pain was now coming from both sides of his groin.

20.  After waiting another 17 months, plaintiff was evaluated on September 4, 2014.  A CT scan administered on that date revealed evidence of bilateral inguinal hernias affecting the left and right groin.

21.  Two years and 10 months after the recommendation for surgery was first made, and after years of suffering unnecessary pain, plaintiff was finally scheduled for surgery on February 23, 2016.  The surgery was performed at SFMC by Dr. Rajiv Shah. The operative report noted that plaintiff had been suffering from "bilateral inguinal hernia of long duration[,]" that the left hernia was "incarcerated and symptomatic[,]" and had been neglected for so long that the surgery had become unnecessarily "complicated[,]" that surgery on the right inguinal hernia would need to wait "to avoid infecting both sides only the left was repaired[,]" and that "[t]he right side will be repaired at 6-8 weeks later."

22.  On April 12, 2016, plaintiff was transported to SFMC for surgery on the right inguinal hernia, an operation also performed by Dr. Shah.

23.  Later that same day, plaintiff was transported back to the prison from SFMC by the NJDOC's Central Transportation Unit (CTU).  CTU used a cargo van outfitted with steal bench seats.  Plaintiff was loaded into the back of the van, unsecured, wearing ankle chains and handcuffs attached to waste a chain.  During the trip, the CTU driver drove the van in such a reckless fashion that plaintiff, bound hand and foot, and unable to protect himself, was hurled from his unsecured seat in the back of the van, causing the sutures and surgical staples used in the right inguinal hernia operation to rip open.

24. Despite the wound caused by CTU van in the foregoing incident, and as a result the prison's and healthcare unit's effort to coverup the incident, plaintiff waited five months before any action was taken.

25. On September 13, 2016, a pelvic ultrasound revealed evidence of the injury occurring on April 12, 2016, which included reopening of the wound where surgery was performed on the right inguinal hernia.

26. On November 28, 2016, plaintiff was returned to SFMC where Dr. Shah performed a procedure to repair the right inguinal surgery.

Facts Relating to Claims

27. Subsequent to the operation on November 28, 2016, plaintiff began to experience the reemergence of pain in the region where surgery had been performed on the right inguinal hernia. Plaintiff promptly sought treatment by the prison's healthcare unit.

28. A CT scan performed on June 23, 2017, revealed evidence of the recurrence of the right inguinal hernia. Dr. Shah, SFMC, UCHC, and Dr. Sandra Connelly were all aware of the results of the test performed on June 23, 2017, were aware that the mesh used in the operation had been reported defective, were aware that plaintiff's pain was caused by the recurrence of the right inguinal hernia due to the defective hernia mesh migrating from its foundation, and were aware that the migrating mesh posed a serious risk of damaging plaintiff's ligament, tendon, and nerve, and strangulating portions of his intestine; nevertheless, Dr. Shah, SFMC, UCHC, and Dr. Connelly deliberately concealed this information from plaintiff, thereby depriving plaintiff of information needed to

6

determine the cause of his injury and pain and to make informed and timely decisions affecting his health and welfare.

29. Unaware of the cause of his injury and pain, plaintiff continued to suffer complications from the defective mess used in the operation on his right inguinal hernia. This included pain at the sight of the surgery, severe constriction of his bowel movements, and pain in his testes. Plaintiff could also feel an undefined object moving beneath the skin in the area where the surgery was performed on the right inguinal hernia, which object, which appeared to be foreign in nature, felt like it was tearing away at muscle tissue, ligament, tendon, and nerve.

30. Unable to bear the pain any longer, plaintiff reported to the clinic officer, defendant SCO Gonzalez, and told Mr. Gonzalez that he needed to see a doctor right away. Plaintiff told Mr. Gonzalez that he was in severe pain and that he feared something had gone terribly wrong with his hernia operation.

31. Gonzalez was aware that plaintiff was suffering in pain and that plaintiff needed emergency medical treatment but refused to allow plaintiff to see a medical practitioner, thereby depriving plaintiff access to needed medical care.

32. The following day, plaintiff again sought emergency treatment for his condition. On this occasion, plaintiff was able to see Dr. Connelly. Plaintiff told Dr. Connolly that he was in severe pain and attempted to show Dr. Conolly the foreign object moving around beneath his skin, but Dr. Connolly refused to examine or evaluate plaintiff.

33.  Not only did Dr. Connolly refuse to examine or evaluate plaintiff, but after consulting with Dr. Sharmalie Perera she came back into the room and informed plaintiff that she had been instructed by Dr. Perera to withhold pain medication, stating "pain is good for you, deal with it."

34.  As a direct result of the actions by Dr. Shah, SCO Gonzalez, Dr. Connolly, and Dr. Perera, plaintiff was deprived a medical evaluation and needed medical treatment, causing plaintiff to suffer further injury and needless pain.

35.  Shortly thereafter, plaintiff was able to obtain copies of records of the hernia operations performed at SFMC.  He reviewed the operative reports prepared by Dr. Shah and discovered for the first time that polypropylene surgical mesh had been used to repair the right inguinal hernia on April 12, 2016.

36.  After additional inquiries, plaintiff discovered for the first time that the polypropylene mesh used in his hernia operations had been withdrawn from the market and recalled by manufacturers as being defective, and that the defective mesh was known to migrate and cause significant injury to patients, just as it was causing plaintiff.

37.  Between August 2017 and September of 2017, plaintiff submitted a number of grievances through the inmate remedy system complaining about the utter disregard of his medical condition by Dr. Shah, SFMC, SCO Gonzalez, Dr Connelly, Dr. Perera, and UCHC. The grievances were addressed to:

- George Robinson, administrator of NSP, responsible for ensuring that prisoners at NSP receive needed medical care;

- Dr. Art Brewer, statewide medical director for UCHC responsible for providing healthcare services to all NJDOC prisoners; and

- Dr. William Briglia, regional medical director for the northern region responsible for providing healthcare services to prisoners at NSP.

38.   In his grievances, plaintiff complained about the omissions by Dr. Shah, SFMC, Dr. Connelly and UCHC in concealing the results of the test performed on June 23, 2017, and particularly for omitting the fact that the mesh used in the operations was defective.   Plaintiff also complained about the actions of SCO Gonzalez in denying plaintiff access to a medical evaluation, and the actions of Dr. Connolly and Dr. Perera refusing to evaluate plaintiff's condition, refusing to provide any treatment for pain, and their failure to refer plaintiff to someone capable of evaluating and treating plaintiff's condition.

39.   Plaintiff never received a written response to his grievances from any of the foregoing defendants.

40.   Plaintiff continued to seek treatment for the pain and complications caused by the failed hernia operation, submitting multiple requests for treatment.

41.   On October 4, 2018, over 15 months after plaintiff first complained of the complications caused by the failed operation on his right inguinal hernia, plaintiff was told he would be evaluated by Dr. Hesham Soliman, but Soliman refused to evaluate plaintiff.

42.   On October 15, 2018, plaintiff was transported to SFMC for a CAT scan. During the trip to SFMC, plaintiff was severely injured in the back of the CTU van resulting in multiple injuries, including new diagnoses for an umbilical hernia and bilateral hydroceles, as observed during the CAT scan performed that day.

43.   The diagnosing physician at SFMC recommended that plaintiff be referred for surgery necessary to repair the right inguinal and umbilical hernias; however, when

plaintiff returned to the prison, Dr. Connolly told plaintiff she was not going to follow the physician's recommendation, adding that plaintiff would have to learn to live with the pain because she had been instructed by Dr. Perera, Dr. Briglia, and Dr. Brewer not to refer plaintiff for surgery because the recommended procedure was too costly and because UCHC was under constraints by the NJDOC to cut the healthcare budget. Connolly told plaintiff that the foregoing policy directive was issued by defendant Lanigan and implemented by defendants Ricci, Robinson, and UCHC.

44.  Plaintiff has continued to complain about being refused treatment for his condition. His grievances have been mostly ignored.  The few times he has been called to the clinic to address a grievance, Dr. Connolly and Dr. Perera simply reiterated the no surgery policy.

45.  Further, when plaintiff obtained copies of his medical records needed to sustain his grievances and to provide copies of his records to the State of the New Jersey in his tort claims notice, he noticed that medical records which should have documented plaintiff's encounters with Dr. Connolly and Dr. Perera and the nursing staff had been purged and falsified on numerous occasions and included references to services never provided, referrals for treatment never made, and false reports of refusals of treatment by plaintiff.

46.  As a result of the foregoing, plaintiff has been denied medical evaluations and needed treatment for the right inguinal hernia, the umbilical hernia, and bilateral hydroceles of the testes, leading to repeated infections, constriction of his bowels, and damage to his ligament, tendon, and nerve from the migrating mesh, all of which has

caused plaintiff to suffer a deterioration of his physical and mental health, irreparable injury from the progression of the untreated hernias, and unnecessary and gratuitous pain.

<u>Exhaustion of State Remedies</u>

47.  Plaintiff incorporates herein paragraphs 1 through 46 as though set forth in full.

48.  On or about November 21, 2018, and in addition to the grievances previously submitted between August 2017 and September of 2017, plaintiff submitted a grievance to the NJDOC complaining about all of the foregoing, as well as the failure to provide an adequate remedy system to address his concerns.  Plaintiff never received a response to his grievance.

49.  On or about November 21, 2018, plaintiff hand delivered a statutory notice of claim to prison officials for service on the State of New Jersey pursuant to the New Jersey Tort Claims Act.  Since the service of his notice of claim, more than six months have elapsed without any response from the State of New Jersey.

<u>Jurisdiction and Venue</u>

50.  Plaintiff incorporates herein paragraphs 1 through 49 as though set forth in full.

51.  This action is brought under the Eighth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act, 42 <u>U.S.C.</u> § 1983, and New Jersey common law.

52.  This Court has subject matter jurisdiction pursuant to 28 <u>U.S.C.</u> §§ 1331 and 1343 because plaintiff seeks compensatory and punitive damages for the deprivation

under color of state law of certain rights of a citizen of the United States secured by the United States Constitution and federal law.

53. This Court has supplemental jurisdiction over claims brought under New Jersey common law pursuant to 28 U.S.C. § 1367.

54. Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to plaintiffs' claims occurred in this judicial district.

First Cause of Action

Deprivation of Eighth and Fourteenth Amendment Rights,
contrary to 42 U.S.C. § 1983

(Against all Defendants)

55. Plaintiff incorporates herein paragraphs 1 through 54 as though set forth in full.

56. The actions, inactions and omissions of the Defendants deprived plaintiff of access to adequate medical care, which deprivation constitutes cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, contrary to 42 U.S.C. §1983.

a) Defendants Lanigan, UCHC, Ricci, Robinson, Dr. Brewer, Dr. Briglia, and Dr. Perera participated in violating plaintiff's rights, directed others to violate those rights, or, as persons in charge, had knowledge of and acquiesced in their subordinates' violations by:

1. instituting and maintaining a policy, practice and custom of refusing to refer prisoners for surgery for non-medical reasons in order to reduce the cost of the healthcare budget, which policy, practice, and custom caused plaintiff to be denied necessary surgery to correct the migrating mesh

used in the right inguinal hernia, denied necessary surgery to repair his

umbilical hernia, and denied necessary surgery to relieve the bilateral

hydroceles of his testes;

2.  turning a blind eye to plaintiff's grievances, thereby enabling the

violations of plaintiff's right of access to adequate medical care by their

subordinates.

b)  Dr. Connolly, Dr. Shah, SFMC, and UCHC were aware of the results of the

test performed on June 23, 2017, were aware that the mesh used in the

operation had been reported defective, were aware that plaintiff's injury and

pain was caused by the recurrence of the right inguinal hernia due to a

defective hernia mesh migrating from its foundation, and were further aware

that the migrating mesh was damaging and/or posed a serious risk of

damaging plaintiff's ligament, tendon, and nerve, as well as incarcerating or

strangulating portions of his intestine; nevertheless, Dr. Connolly, Dr. Shah,

SFMC, and UCHC deliberately concealed this information from plaintiff

thereby depriving plaintiff of information needed to determine the cause of his

injury and pain and to make informed and timely decisions affecting his health

and welfare, resulting in the deterioration of his physical condition, the

exacerbation of his injury, and the wanton and gratuitous infliction of pain.

c)  Defendant SCO Gonzalez was aware that plaintiff was suffering in pain and

that plaintiff needed emergency medical treatment but ignored plaintiff's pain

and suffering by refusing to allow plaintiff to see a medical practitioner,

thereby depriving plaintiff access to medical care.

d) Dr. Connolly was aware that plaintiff was suffering in pain and that plaintiff needed emergency medical treatment but ignored plaintiff's pain and suffering by refusing to examine or evaluate plaintiff, and by refusing to provide any treatment for plaintiff's pain, thereby depriving plaintiff access to medical care.

e) Dr. Perera participated in violating plaintiff's rights by directing her subordinate, Dr. Connolly, to withhold pain medication, thereby depriving plaintiff access to medical care and causing plaintiff to suffer needless and gratuitous pain.

f) Dr. Soliman was aware that plaintiff had a serious medical condition and that he had been scheduled for a medical evaluation to be treated for that condition, but ignored plaintiff's need for medical treatment by refusing to examine or evaluate plaintiff, thereby depriving plaintiff access to medical care.

g) Drs. Perera and Connolly were aware that plaintiff's right inguinal hernia, umbilical hernia, and bilateral hydroceles are serious medical conditions but conspired to frustrate and deprive plaintiff access to medical care for those conditions by purging and falsifying information in plaintiff's medical records to create a false record of services never provided, referrals never made, and false reports of refusals of treatment by plaintiff.

57. As a result of the foregoing, Defendants deprived plaintiff of access to adequate medical care, accurate medical records needed to provide adequate medical

care, personal safety, physical integrity, and freedom from cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

58.  At all times relevant herein, Defendants were acting under the color of the law of the State of New Jersey, or conspiring with other state actors to deprive plaintiff of his right of access to adequate medical care.

59.  The conduct by the Defendants constitutes deliberate and outrageous indifference to plaintiff's constitutional rights, and the Defendants abused their authority by acting with deliberate indifference to, and with reckless, willful and callous disregard for, the known substantial risk of injury to plaintiff's health and safety, in deprivation of his constitutional rights.

60.  As a direct and proximate result of the foregoing deliberate indifference on the part of the Defendants, plaintiff suffered serious physical, mental, psychological and emotional injury, the exacerbation of his physical injuries, and the wanton and gratuitous infliction of pain.

61.  For the foregoing deprivations of plaintiff's constitutional rights, the Defendants are liable in their individual capacities for compensatory damages, punitive damages, and reasonable attorney fees and costs, as permitted by 42 U.S.C. §§ 1983 and 1988.

<u>Second Cause of Action</u>

Professional Negligence

(Against UCHC, Dr. Brewer, Dr. Briglia, Dr. Soliman, Dr. Perera,
Dr. Connell, SFMC, and Dr. Shah)

62.  Plaintiff incorporates herein paragraphs 1 through 61 as though set forth in full.

63. Defendants UCHC, Dr. Brewer, Dr. Briglia, Dr. Soliman, Dr. Perera, Dr. Connell, SFMC, and Dr. Shah each owed plaintiff a duty to exercise reasonable skill and care to evaluate plaintiff's medical condition, provide medically appropriate treatment for his conditions, or to refer plaintiff to someone capable of providing appropriate medical care to alleviate his pain and suffering.

64. By their actions and omissions, the foregoing defendants breached their respective duties of care, as follows:

a) Defendants UCHC, Dr. Brewer, Dr. Briglia, Dr. Soliman, Dr. Perera, and Dr. Connolly breached their duty of care by instituting and maintaining a policy, practice and custom of withholding surgery for non-medical reasons in order to reduce the cost of the healthcare budget, which policy, practice, and custom caused plaintiff to be denied necessary surgery to correct the migrating mesh used in the right inguinal hernia, denied necessary surgery to repair his umbilical hernia, and denied necessary surgery to relieve the bilateral hydroceles of his testes.

b) Defendants UCHC, Dr. Connolly, Dr. Shah, and SFMC breached their duty of care by deliberately concealing and depriving plaintiff of information necessary to seek appropriate treatment to correct the recurrence of his right inguinal hernia due to a defective hernia mesh migrating from its foundation, and by depriving plaintiff of information about the cause of his injury and pain and the serious risk of future injury posed by the migrating mesh and particularly the risk of damage or further damage to plaintiff's ligament,

tendon, and nerve, or the risk of incarcerating or strangulating portions of his

intestine.

c)  Dr. Connolly breached her duty of care by refusing to examine or evaluate

plaintiff, and by refusing to provide any treatment for plaintiff's pain.

d)  Dr. Perera breached her duty of care by directing Dr. Connolly to withhold

medication for plaintiff's pain, causing plaintiff to suffer needless and

gratuitous pain.

e)  Dr. Soliman breached his duty of care by refusing to examine or evaluate

plaintiff.

f)  Drs. Perera and Connolly breached their duties of care by deliberately

frustrating plaintiff's access to medical care by purging and falsifying

information in plaintiff's medical records to create a false record of services

never provided, referrals never made, and false reports of refusals of

treatment by plaintiff.

65.  The foregoing defendants are liable to plaintiff because their actions and

omissions injured plaintiff and because the injuries suffered by plaintiff were proximately

caused by their actions and omissions.

<u>Third Cause of Action</u>

Negligence

(Against Gary Lanigan, Michelle Ricci, George Robinson,
and SCO Gonzalez)

66.  Plaintiff incorporates herein paragraphs 1 through 65 as though set forth in

full.

67.   The above-named defendants owed plaintiff a duty to provide for his custody and care, including the duty to ensure that plaintiff received appropriate medical care.

68.   By their actions and omissions, the foregoing defendants breached their respective duties of care, as follows:

a)   Defendants Lanigan, Ricci, and Robinson breached their duty of care by instituting and maintaining a policy, practice and custom of withholding surgery for non-medical reasons in order to reduce the cost of the healthcare budget, which policy, practice, and custom caused plaintiff to be denied necessary surgery to correct the migrating mesh used in the right inguinal hernia, denied necessary surgery to repair his umbilical hernia, and denied necessary surgery to relieve the bilateral hydroceles of his testes.

b)   Defendant SCO Gonzalez breached his duty of care by refusing to allow plaintiff to see a medical practitioner.

69.   The foregoing defendants are liable to plaintiff because their actions and omissions injured plaintiff and because the injuries suffered by plaintiff were proximately caused by their actions and omissions.

Fourth Cause of Action

Intentional Infliction of Emotional Distress

(Against all Defendants)

70.   Plaintiff incorporates herein paragraphs 1 through 69 as though set forth in full.

71. As alleged in this complaint, the Defendants acted wantonly, intentionally or recklessly, thereby causing plaintiff to suffer emotional distress so severe that no reasonable person could be expected to endure it.

72. Defendants' actions and omissions were so extreme and outrageous as to go beyond all bounds of human decency.

73. As such, Defendants are liable to plaintiff for the intentional infliction of emotional distress.

Fifth Cause of Action

Fraudulent Concealment of Evidence

(Against Dr. Perera and Dr. Connelly))

74. Plaintiff incorporates herein paragraphs 1 through 73 as though set forth in full.

75. Drs. Perera and Connelly are liable to plaintiff for fraudulent concealment of evidence because they breached the legal duty imposed on them by N.J.A.C. 13:35-6.5(b) to ensure that plaintiff's treatment records accurately reflected the treatment or services rendered when they purged and falsified information in plaintiff's medical records to create a false record of services never provided, referrals never made, and false reports of refusals of treatment by plaintiff, all of which is contrary to N.J.S.A. 2C:21-4.1 and N.J.S.A. 2C:28-6(1).

a) The evidence purged, omitted, altered and/or concealed by the above-named defendants is material to prove the truth of claims raised by plaintiff in his then pending administrative grievances as well as in this litigation.

76. Plaintiff could not reasonably have obtained access to the evidence from any other source.

77. The foregoing defendants intentionally purged, omitted, altered, concealed, withheld or destroyed the evidence with the purpose to alter the outcome of plaintiff's administrative grievance, as well as the outcome of this case, knowing that plaintiff's treatment records were evidence in support of his administrative grievances, and in support of this case.

78. Plaintiff is damaged both in his ability to establish the truth of his administrative grievances and in the underlying action by having to rely on an evidential record that did not contain the evidence purged, omitted, altered, concealed, withheld or destroyed.

### Prayer for Relief

WHEREFORE, plaintiffs seek judgment against Defendants as follows:

A. For compensatory and consequential damages;

B. For nominal damages;

C. For exemplary and/or punitive damages in an amount sufficient to deter and to make an example of defendants because their actions and/or inactions, as alleged, were motivated by evil motive or intent, or involved reckless or callous indifference to plaintiff's federally protected rights, or were wantonly or oppressively done;

D. For injunctive relief enjoining defendants from denying plaintiff needed corrective surgery for the right inguinal hernia, the umbilical hernia, and the bilateral hydroceles;

E. For appointment of counsel pursuant to 28 U.S.C. §1915(e)(1), or any other provision or the court's discretion;

F. For an award of reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988, and any other statute or law as may be applicable; and

G. For an award of any other further relief as the court deems fair, just, and equitable.

## Jury Demand

Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff demands a trial by jury on all counts for which a right to a jury trial exists.

Executed:  March 22, 2021

CRAIG F. SZEMPLE

EXHIBIT "C"

**Melchiorre, Dana**

| | |
|---|---|
| **From:** | njdefiling@njd.uscourts.gov |
| **Sent:** | Monday, September 18, 2023 11:11 AM |
| **To:** | njdefiling@njd.uscourts.gov |
| **Subject:** | Activity in Case 3:19-cv-13300-PGS-DEA SZEMPLE v. RUTGERS UNIVERSITY et al Order |

CAUTION: This message originated outside of the firm. Use caution when opening attachments, clicking links or responding to requests for information.

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of New Jersey [LIVE]**

## Notice of Electronic Filing

The following transaction was entered on 9/18/2023 at 11:11 AM EDT and filed on 9/18/2023

| | |
|---|---|
| **Case Name:** | SZEMPLE v. RUTGERS UNIVERSITY et al |
| **Case Number:** | 3:19-cv-13300-PGS-DEA |
| **Filer:** | |
| **Document Number:** | 71(No document attached) |

**Docket Text:**
**TEXT ORDER: Pursuant to this Court's Order appointing Pro Bono counsel in ECF No. [66], all dispositive motion practice is stayed pending the resolution of the issues raised by the Court in ECF No. [66]. It is so ORDERED that ECF Nos. [32], [33], and [40] are terminated. So Ordered by Magistrate Judge Douglas E. Arpert on 9/18/2023. (eh, )**

**3:19-cv-13300-PGS-DEA Notice has been electronically mailed to:**

ANDREW CARTER MATLACK    andrew.matlack@law.njoag.gov, LPGcalendaring@law.njoag.gov, lpgspeccal@law.njoag.gov

ANELIA DIKOVYTSKA BROWN    adb@morlawnj.com

ETHAN JOSHUA LILLIANTHAL    el@morlawnj.com

GARY L. RIVELES    glr@morlawnj.com, griveles@gmail.com, jmw@morlawnj.com, mrs@morlawnj.com

HARRIS SCOTT FELDMAN    HSF@njatty.com, Lperez@njatty.com, Rdubli@njatty.com

KEVIN C. COTTONE     cottonek@whiteandwilliams.com, hutchinsonl@whiteandwilliams.com,
melchiorred@whiteandwilliams.com

MATTHEW C WELLS     mcwells@norris-law.com

NICHOLAS FRANCIS PELLITTA     nfpellitta@norris-law.com, NMLitDocket@norris-law.com

RAAJEN VINOD BHASKAR     Raajen.Bhaskar@law.njoag.gov, lpgspeccal@law.njoag.gov, raajen.bhaskar@law.njoag.gov

**3:19-cv-13300-PGS-DEA Notice has been sent by regular U.S. Mail:**

THOMAS J. PYLE , JR
MAC NEILL O'NEILL & RIVELES LLC
240 CEDAR KNOLLS ROAD
SUITE 104
CEDAR KNOLLS, NJ 07927

EXHIBIT "D"

Craig F. Szemple, pro se
Northern State Prison
168 Frontage Road
P.O. Box 2300
Newark, NJ 07114

| | | |
|---|---|---|
| CRAIG FRANCIS SZEMPLE, | : | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY |
| Plaintiff, | : | |
| | : | No. 19-12746 (PGS)(DEA) |
| v. | : | |
| GARY LANIGAN; RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, UNIVERSITY CORRECTIONAL HEALTH CARE; ART BREWER; WILLIAM BRIGLIA; MICHELLE RICCI; GEORGE ROBINSON; SANDRA CONNELLY; SHARMALIE PERERA; NURSE REGISTER; APN LATIA FEDEI; ST. FRANCIS MEDICAL CENTER; JOHN DOE ##1-3; and JANE DOE ##1-2, individually, jointly, and severally, | : : : : : : : : : | Civil Action<br><br>FIRST AMENDED COMPLAINT AND JURY DEMAND |
| Defendants. | : | |

## Preliminary Statement

Plaintiff is a prisoner committed to the custody and care of the New Jersey Department of Corrections.  Plaintiff was repeatedly injured by defendants during transportation to and from medical appointments in vans that failed to provide adequate accommodations for the safe transport of those with serious medical conditions and physical disabilities. Despite their knowledge of the unsafe conditions of the vans, and despite their knowledge of injuries suffered by plaintiff and other prisoners during previous transports, defendants continued to maintain the system of using the unsafe vans

and refused to make reasonable accommodations for plaintiff's medical condition and physical disabilities, depriving plaintiff of prescribed medical treatment on two occasions in 2017, and forcing plaintiff to ride in the unsafe van for medical treatment in 2018 when the van was driven in such a wanton and reckless fashion as to cause plaintiff to suffer severe physical injury. Defendants then denied plaintiff adequate medical care after being injured in the van during transport, altered medical records to conceal plaintiff's injuries, and withheld medical treatment for non-medical reasons, including for discriminatory reasons based on his religious identity. Plaintiff seeks compensatory, consequential, and punitive damages, as well as injunctive relief requiring appropriate safety features for transport vans and appropriate accommodations for those transported in vans to and from medical appointments.

<u>Parties</u>

1.    Plaintiff Craig Francis Szemple is a prisoner committed to the custody and care of the New Jersey Department of Corrections and is currently confined at Northern State Prison, 168 Frontage Road, P.O. Box 2300, Newark, NJ  07114.

2.    Defendant Gary Lanigan is the former Commissioner of the New Jersey Department of Corrections (NJDOC) responsible for the safe custody and care of prisoners.

3.    Defendant Rutgers, The State University of New Jersey, University Correctional Health Care (UCHC) is an entity that provides inmate health care services to the NJDOC and to plaintiff.

4.    Defendant Art Brewer is believed to be employed by UCHC and at all times herein was responsible for providing health care services to plaintiff.

5.  Defendant William Briglia is believed to be employed by UCHC and at all times herein was responsible for providing health care services to plaintiff.

6.  Defendant Michelle Ricci is an employee of the NJDOC and at all times herein was responsible for plaintiff's safe custody and care.

7.  Defendant Sandra Connolly is believed to be employed by UCHC and at all times herein was responsible for providing health care services to plaintiff.

8.  Defendant Sharmalie Perera is believed to be employed by UCHC and at all times herein was responsible for providing health care services to plaintiff.

9.  Defendant Nurse Register is believed to be employed by UCHC and at all times herein was responsible for providing health care services to plaintiff.

10.  Defendant APN Latia Fedei is believed to be employed by UCHC and at all times herein was responsible for providing health care services to plaintiff.

11.  Defendant St. Francis Medical Center (SFMC) is an entity that provides inmate health care services to the NJDOC and to plaintiff.

12.  Defendants John Doe ##1-3 and Jane Doe ##1-2 are fictitious names of individuals particularly described in this complaint by their specific acts and whose names can only be determined by reference to information in the exclusive possession of the NJDOC and/or UBHC and/or SFMC.

<u>Factual Background</u>

13.  Plaintiff was committed to the custody and care of the NJDOC in or around 1994 and was shortly thereafter housed at the New Jersey State Prison (NJSP).  Plaintiff has subsequently been transferred to various prison facilities, including East Jersey State Prison (EJSP), Northern State Prison (NSP), and South Woods State Prison (SWSP).

3

14. Plaintiff entered NJSP without any specific abdominal complaints and in overall excellent health, however, during the course of confinement he developed a number of medical problems. This includes diagnoses for duodenal ulcers, anemia, prediabetes, ulnar nerve entrapment, arthropathy of the left shoulder, arthritis and joint effusion of the left and right knees, total left knee replacement, degenerative joint disease of the cervical spine, hypertension, hypercholesterolemia, and coronary artery disease requiring open heart surgery in 2001 to perform a quadruple bi-pass.

15. Additionally, plaintiff suffers chronic pain in connection with a debilitating, degenerative spinal disease. Over the years, plaintiff has received multiple MRIs of the cervical and lumbar regions of his spine. The MRI evidence reveals prominent degenerative disease with major changes at the C-5, C-6 with thecal sac narrowing, cord impingement and narrowing of left-foramina, spondylosis and disc bulging in the lumbar section of the lower spine.

16. Plaintiff has a record of diagnosed physical impairments that substantially and severely restrict his ability to perform tasks of central importance to his daily life, especially his ability to use his hands, knees, and back, affecting his ability to walk, bend, and lift. As a result of his medical condition, he frequently needs to be transported for medical treatment to and from community-based medical facilities like SFMC.

17. Prisoners are transported to and from court and medical appointments by the NJDOC's Central Transportation Unit (CTU). Between 2014-2015, the CTU changed the type of vehicles used to transport prisoners, switching from passenger vans with cushioned seats and seat belts to cargo vans. The cargo section of the vans were nothing more than steal enclosures fitted with two steal bench seats running lengthwise along the

inside of both side panels.  No cushioning of any kind is provided for protection from injury and no seatbelts are provided.  Prisoners are forced to ride in the vans shackled and handcuffed, with handcuffs additionally attached to waste chains, all of which severely limits the prisoner's ability to move his or her hands and feet to balance, brace and protect themselves during the trips.

18.  CTU drivers often exceed posted speed limits while transporting prisoners, and have been known to recklessly drive at speeds in excess of 90 mph on highways like the New Jersey Turnpike, swerving in and out of traffic, bouncing their prisoner cargo off the walls of the interior of the vans or launching prisoners airborne to come crashing down on their spines when going over bumps.

19.  The cargo vans used by CTU are believed to be identical to the vans used by police in the City of Baltimore, Maryland, that received national attention when, on April 12, 2015, Freddie Carlos Gray, Jr., a 25-year-old African American, was arrested for possessing a knife. While being transported in the van, Gray sustained such severe injury to his spinal cord that he died of his injuries on April 19, 2015.

20.  Numerous New Jersey prisoners have sustained serious injuries while being transported by CTU, while others have lost their lives due to reckless driving causing accidents during transport.

21.  For example, on Thursday, January 21, 2016, prisoner Jerry Siracusa, 44, from Elizabeth, was killed when the NJDOC van in which he was a passenger crashed into the rear end of a flatbed tow truck on Route 55. Another prisoner, Raul Salazar, 30, was injured in the crash.

22. The unsafe conditions of the vans, and the numerous complaints, injuries and death caused to prisoners during transport, are well known to defendants and prisoners alike.

23. As a result of the foregoing, prisoners in New Jersey refer to the vans used by CTU as the Freddy Gray "Death Van."

24. By January 2015, a significant number of prisoners had refused medical appointments which required transport by the CTU because of fear of riding in the Death Vans. The refusals are ordinarily recorded by the prison's medical department as well as NJDOC-CTU.

25. The increasing number of prisoners refusing transport in the Death Vans can be attributed to a custom and practice on the part of the NJDOC-CTU of discouraging prisoners from seeking medical care. The custom and practice begins when prisoners arrive in holding pens to await transport. CTU officers then subject prisoners to a degrading strip search. After the search, prisoners are dressed and then handcuffed, their handcuffs are then secured to waste chains. They are then leg shackled. Only then are prisoners told that they will be transported in the Death Van and that, "because of over booking for medical appointments the space in the vans will be tight." CTU officers then ask prisoners waiting to be transported: "who wants to refuse the appointment?" As a consequence, many prisoners with serious medical conditions refuse medical trips, foregoing potentially life-saving treatments. NJDOC-CTU officers realize that the practice discourages prisoners from seeking medical treatment and yet the defendants have turned a blind eye to the serious medical needs of prisoners solely for economic

6

reasons and convenience, knowing that fewer prisoners going on medical trips reduces the cost of providing needed medical care for prisoners.

26. In or around April 2016, plaintiff was required to undergo an operation to repair an inguinal hernia. Plaintiff was transported back to the prison from the hospital in the Death Van. During the trip, the CTU driver drove the van in such a reckless fashion that plaintiff was hurled from an unsecured seat in the back of the van, causing the sutures and surgical staples used in the inguinal hernia operation to rip open, necessitating a return trip to the hospital in December 2016 to surgically repair the wound.

27. As a result of the foregoing incident, and in recognition of both the actual injury that occurred during transport, and the potential for injury to plaintiff arising from his physical disabilities, an accommodation was made to transport plaintiff to medical appointments in the back of an ambulance or wheelchair accessible van. The accommodation was made by a top nursing manager, Dolores Guida, who placed plaintiff's name on an "exception list," which is a standing medical order and notification to transport a prisoner to medical appointments by wheelchair accessible vans or ambulances. The "exception list" notification was conspicuously placed in plaintiff's electronic medical records (EMR).

28. In 2016, plaintiff was transported for needed medical treatment by the CTU on six occasions. On each such occasion, plaintiff specifically informed the CTU drivers that he been placed on the exception list for transport by ambulance or a wheelchair accessible van to accommodate his medical condition and disabilities. But on each

occasion the CTU drivers refused to perform a lookup to determine whether the accommodation had been made, forcing plaintiff into the Death Van over his objection.

### Facts Related to Claims

29. Plaintiff incorporates herein paragraphs 1 through 28 as though set forth in full.

30. Between June 2017 and September of 2017, while housed at Northern State Prison (NSP), plaintiff submitted a number of grievances through the inmate remedy system as well as written requests to prison officials and medical personnel. The grievances and written requests were addressed to:

- Gary Lanigan, commissioner of the NJDOC, responsible for implementing the practice of using the Death Van to discourage prisoners from seeking ancillary medical treatment;

- Michelle Ricci, then director of operations (now assistant commissioner division of operations, responsible for the implementation of policies governing operation of the CTU;

- George Robinson, administrator of NSP, responsible for ensuring that prisoners at NSP receive needed medical treatment;

- Dr. Art Brewer, statewide medical director for UCHC responsible for providing healthcare services to all NJDOC prisoners;

- Dr. William Briglia, regional medical director for the northern region responsible for providing healthcare services to prisoners at NSP;

- Dr. Sharmalie Perera, medical director at NSP responsible for providing healthcare services to prisoners at NSP; and

- Dr. Sandra Connelly, an internist at NSP.

31. In his grievances, plaintiff complained about the failure of Lanigan, Ricci, Robinson, Brewer, Briglia, Perera, and Connolly to remedy previous complaints about

the dangerous conditions of transport in the Death Van, failing to train CTU drivers to perform lookups for transport accommodations, ignoring the "exception list" order prescribed by Nurse Guida, failing to document injuries occurring in the Death Van, and failing provide medical treatment for injuries sustained in the Death Van.

32.   The above-mentioned grievances and written requests provided a detailed history of plaintiff's experiences in the Death Van, as well as his injuries and lack of medical care. Moreover, in regard to future transport, plaintiff specifically asked the foregoing defendants to accommodate his physical disabilities by arranging for him to be transported by ambulance or at the very least a wheelchair accessible van when he was taken to his medical appointments.

33.   Plaintiff never received a response to his grievances from any of the foregoing defendants.

34.   In or around September 2017, while confined at Northern State Prison, plaintiff was scheduled for a number of necessary medical treatments and procedures. On one such occasion, when plaintiff realized that he was to be taken to the hospital in the Death Van, plaintiff told Dr. Sandra Connolly that he was supposed to be transported by ambulance or a wheel chair accessible van, and that a provision by Nurse Guida for such an accommodation was in his EMR record.  Dr. Connolly told plaintiff that she was aware of his grievances about being injured during his medical trips and his complaints about being denied a transport accommodation but then stated that a decision had been made "downtown" that plaintiff would not be transported to and from hospital trips in an ambulance or wheelchair accessible van as ordered by Nurse Guida because she (Dr. Connelly) was told that she should just ignore Nurse Guida's order and that these

9

decisions were made by her immediate supervisor, Dr. Perera, by the statewide medical director, Dr. Art Brewer, by the regional medical director, Dr. William Briglia, by the prison's administrator, George Robinson, by the NJDOC's director or operations, Michelle Ricci, and by the NJDOC's commissioner, Gary Lanigan. Connolly then said, "furthermore, I do not care," expressly ignoring the risk of injury to plaintiff. Connelly said she would continue to ignore the transport accommodation as long as her supervisor and the department heads directed her to do so.

35. Connolly further indicated that she was directed by her supervisor, Dr. Perera, to discontinue plaintiff's pain medications and medical procedures, saying they were too costly for UCHC.

36. Shortly thereafter, when plaintiff requested copies of his EMR, he discovered that the standing order for medical transport previously issued by Nurse Guida had been removed from his EMR, and that certain medications that had been prescribed to manage his medical conditions and pain were discontinued.

37. As a direct consequence of the foregoing actions by the above-referenced defendants, which included the discontinuation of prescribed medications and procedures, and the purging of the medical transport order from plaintiff's EMR, plaintiff was deprived prescribed medications and treatments, and refused medically appropriate transport accommodations, resulting in unnecessary physical debilitation and pain and the denial of medically prescribed treatment that had been scheduled at SFMC on two separate occasions in 2017.

38. On or about October 15, 2018, plaintiff was listed for transport to SFMC for a prescribed CAT scan. Plaintiff informed defendant John Doe 1 about his medical

10

condition and the need for transport in a wheelchair accessible van or ambulance, and then asked John Doe 1 to inquire about the medical transport accommodation that had previously been a part of his EMR, but John Doe 1 responded that he would not make any such inquiry, stating: "We don't make accommodations for prisoners."

39.   As a result of the foregoing, plaintiff was forced to ride in the Death Van. During the trip, the driver, defendant John Doe 2, drove well in excess of the posted speed limit and in such a reckless manner as to cause plaintiff to be violently bounced off the walls of the cargo hold and thrown to the floor, further causing plaintiff to suffer severe injury and pain to his spine and lower abdomen, resulting in visible black-and-blue bruising over his torso and extremities.  John Doe 2 refused to report plaintiff's injuries during the trip in an effort to cover up his actions with the result that plaintiff was denied timely medical treatment for injuries, including an umbilical hernia and bilateral hydroceles.

40.   SFMC staff were aware that plaintiff suffered severe injuries during his transport on October 15, 2018, and that such injuries would require medical treatment, yet SFMC staff working in the hospital's prison unit, and particularly Jane Doe 1 and John Doe 3, refused to document the injuries that plaintiff suffered during transport, with the direct result of concealing plaintiff's injuries during transport and, thereby, frustrating emergency medical treatment of plaintiff's injuries and pain, including an umbilical hernia and bilateral hydroceles that surgeons at SFMC diagnosed as needing surgery.

41.   When plaintiff was returned to the prison, he was given a routine physical examination as is customary following medical trips outside of the prison. The examining nurse, defendant Jane Doe 2, recorded in the EMR that plaintiff had visible bruising on

11

his torso and extremities that were not present when plaintiff left the prison to be treated at SFMC; however, another nurse, defendant Nurse Register, urged Jane Doe 2 to change the EMR injury report, which Jane Doe 2 did, thereby deleting any reference to plaintiff's injury on the trip or the visible bruising on plaintiff's body.

42. As a direct result of the omissions by SFMC staff, and the alteration of the EMR injury report following the October 15, 2018, trip to SFMC, plaintiff was denied needed medical treatment for his injuries and for pain, including needed surgery for an umbilical hernia and bilateral hydroceles.

43. When plaintiff confronted Dr. Connolly and Dr. Perera the next day about the injuries and the alteration of the EMR injury report, Dr. Connolly and Dr. Perera ignored the claim. Although Dr. Connolly and Dr. Perera both examined plaintiff physically, observed the bruising, and caused plaintiff to recoil in pain when touching the bruised areas on his body, they refused to report those findings in plaintiff's EMR and refused to provide any medical treatment. Instead, the reply that plaintiff received from Connolly and was: "Pain is good for you, deal with it." Dr. Perera, who overheard the conversation, took no action to correct Connelly's remarks.

44. When plaintiff complained to APN Latia Fedei about the increased level of untreated pain that he was experiencing, Fedei ignored plaintiff's complaint and refused to conduct any medical evaluation. Instead, Fedei, a person of Arab descent, made the following responsive remarks: "You Americans are weak, especially you Jews. In the Middle East, we don't take pain meds and we built the pyramids without doctors or nurses to care for us. America is a weak country and the Jews are the worst of the lot." Plaintiff, an observant Jew, after having been deprived a medical evaluation for

being a "Jew," upon hearing these anti-Semitic ravings, and not wanting to be further berated for his religion, got up and walked out of Fedei's office. Connolly and Perera were present when Fedei berated plaintiff for being Jewish but failed to intervene and even encouraged Fedei to do so.

45. As a consequence of the foregoing, and as a direct result of the concealed injuries that plaintiff suffered while being transported in the Death Van, plaintiff was refused medical evaluation for his injuries and pain.

Exhaustion of State Remedies

46. Plaintiff incorporates herein paragraphs 1 through 45 as though set forth in full.

47. On or about October 30, 2018, plaintiff submitted a formal administrative remedy form to the NJDOC complaining about being denied adequate medical care for his injuries on October 15, 2018, withholding medical treatment due to his religious identity, denial of adequate accommodations for his medical condition and disabilities, failure of medical staff to report his injuries, the purging of information from his medical record, and the failure to provide an adequate remedy system. Plaintiff never received a response to his remedy.

48. On or about October 30, 2018, plaintiff hand delivered a statutory Notice of Claim to prison officials for service on the State of New Jersey pursuant to the New Jersey Tort Claims Act. Since the service of his Notice of Claim, more than six months have elapsed without any response from the State of New Jersey.

13

## Jurisdiction and Venue

49. Plaintiff incorporates herein paragraphs 1 through 48 as though set forth in full.

50. This action is brought under the Eighth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act, 42 U.S.C. §§§ 1983, 1985(3), and 1986; Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); and New Jersey common law.

51. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because plaintiff seeks compensatory and punitive damages for the deprivation under color of state law of certain rights of a citizen of the United States secured by the United States Constitution and federal law as set forth above.

52. This Court has supplemental jurisdiction over claims brought under New Jersey Law pursuant to 28 U.S.C. § 1367.

53. Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to plaintiffs' claims occurred in this judicial district.

## First Cause of Action

Deprivation of Eighth and Fourteenth Amendment Rights,
contrary to 42 U.S.C. § 1983

(Individual Capacity Claims Against Gary Lanigan, UCHC, Art Brewer, William Briglia, Michelle Ricci, George Robinson, Sandra Connelly, Sharmalie Perera, Nurse Register, APN Latia Fedei, SFMC, John Doe ## 2-3, and Jane Doe ##1-2)

14

54.  Plaintiff incorporates herein paragraphs 1 through 53 as though set forth in full.

55.  Defendants Gary Lanigan, UCHC, Art Brewer, William Briglia, Michelle Ricci, George Robinson, Sandra Connelly, Sharmalie Perera, Nurse Register, APN Latia Fedei, SFMC, John Doe ##2-3, and Jane Doe ##1-2 (the "§ 1983 Individual Defendants"), are liable to plaintiff for their acts, omissions, and failure to supervise, as set forth herein:

a)  Defendants Lanigan, Ricci and Robinson participated in violating plaintiff's rights, directed others to violate those rights, or, as persons in charge, had knowledge of and acquiesced in their subordinates' violations, by:

  1.  Instituting and maintaining a policy, practice and custom of using Death Vans in the CTU despite actual knowledge that the Death Vans were unsafe and were causing prisoners, including plaintiff, to suffer serious injuries; and

  2.  Directing Perera and Connolly to refuse plaintiff's request for an accommodation for his disabilities so he could be safely transported to receive prescribed medical treatments resulting in plaintiff's having been deprived prescribed medical treatment on two occasions in 2017, and resulting in plaintiff's having been seriously injured during transport on October 15, 2018.

b)  Defendants Lanigan, UCHC, Brewer, Briglia, Ricci, and Robinson participated in violating plaintiff's rights, directed others to violate those

15

rights, or, as persons in charge, had knowledge of and acquiesced in their subordinates' violations, by:

1. Instituting and maintaining a policy, practice and custom of refusing to respond to or remedy grievances from prisoners, including plaintiff, complaining about the unsafe conditions in the Death Vans, injuries suffered in the vans, the concealment of those injuries by staff, and the lack of medical care to treat those injuries; and

2. Directing Perera and Connolly to refuse plaintiff's request for an accommodation for his disabilities so he could be safely transported to receive prescribed medical treatments resulting in plaintiff's having been deprived prescribed medical treatment on two occasions in 2017, and resulting in plaintiff's having been seriously injured during transport on October 15, 2018.

c) Defendant Perera participated in violating plaintiff's rights, directed others to violate those rights, or, as a person in charge, had knowledge of and acquiesced in her subordinates' violations, by:

1. Directing Connolly to refuse plaintiff's request for an accommodation for his disabilities so he could be safely transported to receive prescribed medical treatments resulting in plaintiff's having been deprived prescribed medical treatment on two occasions in 2017, and resulting in plaintiff's having been seriously injured during transport on October 15, 2018.

2. Directing Connolly to discontinue medication that had been prescribed for plaintiff's medical condition and pain for non-medical reasons related to

the cost of care, causing plaintiff to unnecessarily suffer further physical
debilitation and pain.

d) Defendant John Doe 1 consciously ignored and serious and substantial risk of
injury to plaintiff when, after being made aware of plaintiff's need for
transport in a wheelchair accessible van or ambulance, and after being asked
to inquire about the medical transport accommodation that had previously
been made by medical staff, he refused to make any inquiry, stating: "We
don't make accommodations for prisoners," resulting in plaintiff being
seriously injured on October 15, 2018.

e) Defendant John Doe 2 caused plaintiff to suffer severe injuries during the
transport on October 15, 2018, by driving the Death Van in excess of the
posted speed limit and in a wanton and reckless fashion and then violated
plaintiff's right to adequate medical care by refusing to report plaintiff's
injuries in order to conceal those injuries from authorities.

f) SFMC, Jane Doe 1, and John Doe 3 were aware that plaintiff suffered severe
injuries during his transport on October 15, 2018, and that said injuries
required emergency medical treatment, and yet said defendants refused to
evaluate plaintiff and refused to document the injuries that plaintiff suffered
during transport with the direct result of concealing plaintiff's injuries during
transport and, thereby, frustrating timely medical treatment of plaintiff's
injuries and pain.

g) Defendants Jane Doe 2 and Nurse Register altered the medical record of
plaintiff's injuries on October 15, 2018, in order to conceal the injuries

17

suffered by plaintiff in the Death Van and then deprived plaintiff medical treatment for his injuries and pain.

h) Defendants Connolly and Perera deprived plaintiff of medical care by:

1. Refusing to provide an accommodation for plaintiff's disabilities so he could be safely transported to receive prescribed medical treatments resulting in plaintiff's having been deprived prescribed medical treatment on two occasions in 2017, and resulting in plaintiff's having been seriously injured during transport on October 15, 2018.

2. Discontinuing medication that had been prescribed for plaintiff's medical condition and pain for non-medical reasons related to the cost of care, causing plaintiff to unnecessarily suffer further physical debilitation and pain.

3. Purging from plaintiff's EMR the transport accommodation previously prescribed by Nurse Guida.

4. Refusing to report plaintiff's injuries in his EMR after having physically examined and observed the injuries caused on October 15, 2018, refusing to provide plaintiff treatment for his injuries and pain, and refusing to investigate plaintiff's claim that Nurse Register and Jane Doe 2 altered the initial EMR report of his injury.

i) Defendant APN Latia Fedei deprived plaintiff of needed medical treatment for non-medical reasons after expressing a discriminatory bias against treating plaintiff for his pain because he is Jewish.

18

56. As a result of the foregoing, the § 1983 Individual Defendants deprived plaintiff of his constitutional right to adequate medical care, accurate medical records needed to provide adequate medical care, personal safety, physical integrity, and freedom from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

57. At all times relevant herein, the § 1983 Individual Defendants were acting under color of the law of the State of New Jersey.

58. The conduct by the § 1983 Individual Defendants constituted deliberate and outrageous indifference to plaintiff's constitutional rights, and the § 1983 Individual Defendants abused their authority by acting with deliberate indifference to, and with reckless, willful and callous disregard for, the known substantial risk of injury to plaintiff, in deprivation of his constitutional rights.

59. As a direct and proximate result of the foregoing deliberate indifference on the part of the § 1983 Individual Defendants, plaintiff suffered serious physical, mental, psychological and emotional injury, including pain and suffering.

60. For the foregoing deprivations of plaintiff's constitutional rights, the § 1983 Individual Defendants are liable in their individual capacities for compensatory damages, punitive damages, and reasonable attorney fees and costs, as permitted under 42 U.S.C. §§ 1983 and 1988.

Second Cause of Action

Conspiracy to Violate Civil Rights, 42 U.S.C. § 1985

(Individual Capacity Claims Against Sandra Connelly,
Sharmalie Perera, and APM Latia Fedei)

61. Plaintiff incorporates herein paragraphs 1 through 60 as though set forth in full.

62. Defendants Sandra Connelly, Sharmalie Perera and Latia Fedei (the "§ 1985 Individual Defendants"), are liable for conspiring to deprive plaintiff equal access to medical care for non-medical reasons based on a discriminatory animus against plaintiff's Jewish religion.

63. As a result of the foregoing, the § 1985 Individual Defendants deprived plaintiff of his constitutional right of equal access to medical care under the Eighth and Fourteenth Amendments to the United States Constitution.

64. At all times relevant herein, the § 1985 Individual Defendants were acting under color of the law of the State of New Jersey.

65. The conduct by the § 1985 Individual Defendants constituted deliberate and outrageous indifference to plaintiff's constitutional rights and the § 1985 Individual Defendants abused their authority by acting with deliberate indifference to, and with reckless, willful and callous disregard for, the known substantial risk of injury to plaintiff, in deprivation of his constitutional rights.

66. As a direct and proximate result of the foregoing deliberate indifference on the part of the § 1985 Individual Defendants, plaintiff suffered serious physical, mental, psychological and emotional injury, including pain and suffering.

67. For the foregoing deprivations of plaintiff's constitutional rights, the § 1985 Individual Defendants are liable in their individual capacities for compensatory damages, punitive damages, and reasonable attorney fees and costs, as permitted under 42 U.S.C. §§ 1985 and 1988.

Third Cause of Action

Failure to Prevent Conspiracy to Violate Civil Rights,
42 U.S.C. § 1986

(Individual Capacity Claims Against Sandra Connelly,
Sharmalie Perera, and Latia Fedei)

68.  Plaintiff incorporates herein paragraphs 1 through 67 as though set forth in full.

69.  Defendants Sandra Connelly, Sharmalie Perera and Latia Fedei (the "§ 1986 Individual Defendants"), are liable for failing to prevent a conspiracy to deprive plaintiff equal access to medical care.

70.  As a result of the foregoing, the § 1986 Individual Defendants deprived plaintiff of his constitutional right to medical care under the Eighth and Fourteenth Amendments to the United States Constitution.

71.  At all times relevant herein, the § 1986 Individual Defendants were acting under color of the law of the State of New Jersey.

72.  The conduct by the § 1986 Individual Defendants constituted deliberate and outrageous indifference to plaintiff's constitutional rights and the § 1986 Individual Defendants abused their authority by acting with deliberate indifference to, and with reckless, willful and callous disregard for, the known substantial risk of injury to plaintiff, in deprivation of his constitutional rights.

73.  As a direct and proximate result of the foregoing deliberate indifference on the part of the § 1986 Individual Defendants, plaintiff suffered serious physical, mental, psychological and emotional injury, including pain and suffering.

21

74. For the foregoing deprivations of plaintiff's constitutional rights, the § 1986 Individual Defendants are liable in their individual capacities for compensatory damages, punitive damages, and reasonable attorney fees and costs, as permitted under 42 U.S.C. §§ 1986 and 1988.

## Fourth Cause of Action

### Violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.

**(Official Capacity Claims Against Gary Lanigan, UCHC, Michelle Ricci, George Robinson, Sandra Connelly, Sharmalie Perera, and John Doe #1)**

75. Plaintiff incorporates herein paragraphs 1 through 74 as though set forth in full.

76. Plaintiff has a record of being physically disabled as a result of his medical condition and infirmities.

77. At all times herein, plaintiff was qualified to participate in the programs, services, and activities provided by the NJDOC, including equal access to inmate health services.

78. At all times herein defendants Gary Lanigan, UCHC, Michelle Ricci, George Robinson, Sandra Connelly, Sharmalie Perera, and John Doe #1 (the ADA Official Capacity Defendants) deprived plaintiff of access to medical care on two occasions in 2017 when they:

    a) Refused to provide reasonable accommodations necessary for him to be safely transported to prescribed medical appointments and court trips.

b) failed to provide wheelchair accessible medical transport so he could attend his medical appointments and court hearings and attend them without being subjected to serious injury.

c) ignored the prescription for wheelchair accessible medical transport previously entered into plaintiff's EMR by Nurse Guida.

d) purged from his medical record the accommodation for medical transport previously prescribed by Nurse Guida.

79. For the foregoing deprivations of plaintiff's rights, the ADA Official Capacity Defendants are liable in their official capacities for compensatory damages, punitive damages, as well as reasonable attorneys' fees and costs.

80. Further, in accordance with the enforcement provisions of the ADA, plaintiff seeks injunctive relief enjoining the ADA Defendants from discriminating against him by denying or depriving him reasonable, safe, and medically appropriate transport accommodations for medical appointments and court hearings; investigation and enforcement of his ADA claims by the Attorney General; the imposition of appropriate civil penalties; and reasonable attorney fees and costs. 42 U.S.C. §§ 12188 and 12205.

Fifth Cause of Action

Violations of Section 504 of the Rehabilitation Act of 1973,<br>29 U.S.C. § 794(a);

(Official Capacity Claims Against Gary Lanigan, UCHC, Michelle Ricci, George Robinson, Sandra Connelly, Sharmalie Perera, and John Doe #1)

81. Plaintiff incorporates herein paragraphs 1 through 80 as though set forth in full.

82. On information and belief, the NJDOC receives federal financial assistance in connection with operations and programs provided by its facilities.

83. Plaintiff has a record of being physically disabled as a result of his medical condition and infirmities.

84. At all times herein, plaintiff was qualified to participate in the programs, services, and activities provided by the NJDOC, including equal access to inmate health services.

85. Defendants Gary Lanigan, UCHC, Michelle Ricci, George Robinson, Sandra Connelly, Sharmalie Perera, and John Doe #1 (the Section 504 Official Capacity Defendants) deprived plaintiff of access to medical care on two occasions in 2017 when they:

    e) Refused to provide a reasonable accommodations necessary for him to be safely transported to prescribed medical appointments and court trips.

    f) failed to provide wheelchair accessible medical transport so he could attend his medical appointments and court hearings and attend them without being subjected to serious injury.

    g) ignored the prescription for wheelchair accessible medical transport previously entered into plaintiff's EMR by Nurse Guida.

    h) purged from his medical record the accommodation for medical transport previously prescribed by Nurse Guida.

86. For the foregoing deprivations of plaintiff's rights under Section 504 of the Rehabilitation Act of 1973, the Section 504 Official Capacity Defendants are liable in

their official capacities for compensatory damages, punitive damages, as well as reasonable attorneys' fees and costs.

87.    Further, in accordance with the enforcement provisions of the Rehabilitation Act, plaintiff seeks injunctive relief enjoining the Section 504 Official Capacity Defendants from discriminating against him by denying or depriving him reasonable, safe, and medically appropriate transport accommodations for medical appointments and court hearings; the imposition of appropriate civil penalties; and reasonable attorney fees and costs.

Sixth Cause of Action

Professional Negligence

(Against UBHC, Sandra Connelly, Sharmalie Perera, APN Latia Fedei,
SFMC, Jane Doe ##1-2, John Doe #3, and Nurse Register)

88.    Plaintiff incorporates herein paragraphs 1 through 87 as though set forth in full.

89.    Defendants UBHC, Sandra Connelly, Sharmalie Perera, APN Latia Fedei, SFMC, Jane Doe ##1-2, John Doe #3, and Nurse Register each owed plaintiff a duty to exercise reasonable skill and care to provide accommodations so plaintiff could gain equal access to medical treatment, document and report his injuries, and to provide medically appropriate treatment for his injuries and to alleviate his pain and suffering.

90.    By their actions and omissions, the foregoing defendants breached their respective duties of care by failing to provide transport accommodations so plaintiff could gain equal access to medical treatment, failing to document and report plaintiff's injuries, refusing to evaluate his medical condition, failing to provide medically

25

appropriate treatment for his injuries, pain, and suffering, and by refusing such treatment for non-medical and/or discriminatory reasons.

91. The foregoing defendants are liable to plaintiff because their actions and omissions injured plaintiff and because the injuries suffered by plaintiff were proximately caused by their actions and omissions.

Seventh Cause of Action

Negligence

(Against John Doe ##1-2)

92. Plaintiff incorporates herein paragraphs 1 through 91 as though set forth in full.

93. Defendant John Doe #1 owed plaintiff a duty to exercise reasonable skill and care to investigate and to provide a transport accommodation so plaintiff could gain equal access to medical treatment on October 15, 2018.

94. Defendant John Doe #2 owed plaintiff a duty to drive the Death Van in a reasonable manner to prevent injury to its occupants and to report plaintiff's injury during the trip on October 15, 2018.

95. By their actions and omissions, the foregoing defendants breached their respective duties of care by failing to investigate and provide a transport accommodation, by failing to drive the Death Van in a reasonable manner, and by failing to document and report plaintiff's injuries.

96. The foregoing defendants are liable to plaintiff because their actions and omissions injured plaintiff and because the injuries suffered by plaintiff were proximately caused by their actions and omissions.

26

## Eighth Cause of Action

### Intentional Infliction of Emotional Distress

(Against Sandra Connelly, Sharmalie Perera, APN Latia Fedei,
Jane Doe ##1-2, John Doe ##1-3, and Nurse Register)

97.  Plaintiff incorporates herein paragraphs 1 through 96 as though set forth in
full.

98.  The above defendants acted wantonly, intentionally or recklessly as alleged
in this complaint thereby causing plaintiff to suffer emotional distress so severe that no
reasonable person could be expected to endure it.

99.  Defendants' actions and omissions were so extreme and outrageous as to go
beyond all bounds of human decency.

100.  As such, defendants are liable to plaintiff for the intentional infliction of
emotional distress.

## Ninth Cause of Action

### Fraudulent Concealment of Evidence

(Against Sandra Connelly, Sharmalie Perera,
Jane Doe ##1-2, John Doe ##2-3, and Nurse Register)

101.  Plaintiff incorporates herein paragraphs 1 through 100 as though set forth in
full.

102.  Defendants Sandra Connelly, Sharmalie Perera, Jane Doe ##1-2, John Doe
##2-3, and Nurse Register are liable to plaintiff for fraudulent concealment of evidence
because:

   a)  Defendants Connelly and Perera breached the legal duty imposed on them by

   N.J.A.C. 13:35-6.5(b) to ensure that plaintiff's treatment records accurately

27

reflected the treatment or services rendered when they purged Nurse Guida's transport prescription from plaintiff's EMR and when they failed to report and record in plaintiff's EMR the injuries they observed during their physical examination of plaintiff on or about October 16, 2018, all of which was contrary to N.J.S.A. 2C:21-4.1 and N.J.S.A. 2C:28-6(1).

    b) Defendant Jane Doe #1 and John Doe ##2-3 breached the legal duty imposed on them by N.J.A.C. 13:35-6.5(b) by failing to report and record in plaintiff's medical record the injuries they observed during their physical examination of plaintiff on or about October 15, 2018.

    c) Defendant Jane Doe #2 and Nurse register breached the legal duty imposed on them by N.J.A.C. 13:35-6.5(b) by failing to report and record in plaintiff's medical record the injuries they observed during their physical examination of plaintiff on or about October 15, 2018, and further breach the legal duty imposed on them by N.J.S.A. 2C:21-4.1 and N.J.S.A. 2C:28-6(1) when they altered plaintiff's EMR to conceal the injuries he suffered in the Death Van on or about October 15, 2018.

103. The evidence purged, omitted, altered and/or concealed by the above-named defendants is material to prove the truth of claims raised by plaintiff both in his prior administrative grievances actions as well as in this litigation.

104. Plaintiff could not reasonably have obtained access to the evidence from any other source.

105. Defendants intentionally purged, omitted, altered, concealed, withheld or destroyed the evidence with the purpose to disrupt plaintiff's administrative grievance

actions knowing that plaintiff's treatment records were evidence in support of his

previously filed administrative grievances actions about being injured in the Death Van.

106.   Plaintiff is damaged both in his ability to establish the truth of his

administrative grievance actions and in the underlying action by having to rely on an

evidential record that did not contain the evidence purged, omitted, altered, concealed,

withheld or destroyed.

<u>Prayer for Relief</u>

WHEREFORE, plaintiffs seek judgment against defendants as follows:

A. For compensatory and consequential damages;

B. For nominal damages;

C. For exemplary and/or punitive damages in an amount sufficient to deter and to
   make an example of defendants because their actions and/or inactions, as alleged,
   were motivated by evil motive or intent, or involved reckless or callous
   indifference to plaintiff's federally protected rights, or were wantonly or
   oppressively done;

D. For injunctive relief enjoining defendants from denying plaintiff reasonable
   accommodations for safe transport to and from medical appointments and court
   hearings;

E. For appointment of counsel pursuant to 28 <u>U.S.C.</u> §1915(e)(1), 42 <u>U.S.C.</u>
   § 2000a–3(a), or any other provision or the court's discretion;

F. For an award of reasonable attorney fees and costs pursuant to 42 <u>U.S.C.</u> § 1988,
   and any other statute or law as may be applicable; and

G. For an award of any other further relief as the Court deems fair, just, and
   equitable.

Jury Demand

Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff demands a trial by

jury on all counts for which a right to a jury trial exists.

Executed: February 25, 2021

CRAIG F. SZEMPLE

EXHIBIT "E"

PRO BONO SCHEDO

# U.S. District Court
## District of New Jersey [LIVE] (Trenton)
## CIVIL DOCKET FOR CASE #: 3:19-cv-12746-RK-JTQ

SZEMPLE v. RUTGERS UNIVERSITY et al

Assigned to: Judge Robert Kirsch

Referred to: Magistrate Judge Justin T. Quinn

Cause: 42:1983 Prisoner Civil Rights

Date Filed: 05/21/2019

Jury Demand: Both

Nature of Suit: 550 Prisoner: Civil Rights

Jurisdiction: Federal Question

**Plaintiff**

**CRAIG FRANCIS SZEMPLE**
SBI#729710A
SOUTH WOODS STATE PRISON
215 SOUTH BURLINGTON ROAD
BRIDGETON, NJ 08302

represented by **HARRIS SCOTT FELDMAN**
BLUME FORTE FRIED ZERRES &
MOLINARI, PC.
1 MAIN STREET
CHATHAM, NJ 07928
973-635-5400
Fax: 973-635-9339
Email: HSF@njatty.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**RUTGERS UNIVERSITY**

represented by **ANELIA DIKOVYTSKA BROWN**
MacNeill, O'Neill & Riveles, LLC
240 Cedar Knolls Road
Suite 104
Cedar Knolls, NJ 07927
973-409-6600
Email: adb@morlawnj.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ETHAN JOSHUA LILLIANTHAL**
MacNeill O'Neill Riveles & Spitzer
240 Cedar Knolls Rd.
Cedar Knolls, NJ 07927
973-409-6600
Email: el@morlawnj.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**GARY L. RIVELES**
MACNEILL, O'NEILL & RIVELES
240 CEDAR KNOLLS ROAD
SUITE 104
CEDAR KNOLLS, NJ 07927
973-409-6600

*ATTORNEY TO BE NOTICED*

**Defendant**

**NEW JERSEY DEPARTMENT OF CORRECTIONS**
*TERMINATED: 03/25/2020*

**Defendant**

**NJDOC COMMISSIONER GARY LANIGAN**

**Defendant**

**GEORGE ROBINSON**
*ADMINISTRATOR*

**Defendant**

**NORTHERN STATE PRISON**
*TERMINATED: 03/25/2020*

**Defendant**

**PAT NOGAN**
*TERMINATED: 03/25/2020*

**Defendant**

**BEVERLY HASTINGS**
*TERMINATED: 03/25/2020*

**Defendant**

**MICHELLE RICCI**

**Defendant**

**JOHN CUNNINGHAM**
*TERMINATED: 03/25/2020*

**Defendant**

**WILLIE BONDS**
*TERMINATED: 03/25/2020*

**Defendant**

**M.D. HESHAM SOLIMAN**
*TERMINATED: 03/25/2020*

**Defendant**

**WILLIAM BRIGLIA, DO**

**Defendant**

**SHARMALIE PERERA, M.D.**       represented by **ANELIA DIKOVYTSKA BROWN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*ATTORNEY TO BE NOTICED*

**Defendant**

**LATIFA FEDEI, APN**                     represented by   **ANELIA DIKOVYTSKA BROWN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ETHAN JOSHUA LILLIANTHAL**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**GARY L. RIVELES**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MATTHEW C WELLS**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**NICHOLAS FRANCIS PELLITTA**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**THOMAS J. PYLE , JR.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**REGISTER SCO SAUNDERS**
*TERMINATED: 03/25/2020*

**Defendant**

**SCO GONZALEZ**
*TERMINATED: 03/25/2020*

**Defendant**

**SCO RAMOS**
*TERMINATED: 03/25/2020*

**Defendant**

**SCO CULIBETTE**
*TERMINATED: 03/25/2020*

**Defendant**

**SCO MORTON**
*(FIRST NAMES UNKNOWN)*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/21/2019 | 1 | Complaint Received. (Attachments: # 1 Letter, # 2 Account Information, # 3 Legal Argument For Appointment of Counsel, # 4 Affidavit in Support)(jmh) (Entered: 05/21/2019) |
| 05/28/2019 | 2 | ORDER that the Clerk of the Court shall administratively terminate this case and mail Plaintiff certain forms; that if Plaintiff wishes to reopen this case he shall notify the Court, in writing, within 30 days of the date of entry of this Order. Signed by Judge Peter G. Sheridan on 5/28/2019. (mmh) (Entered: 05/28/2019) |
| 06/03/2019 | 3 | APPLICATION to proceed IN FORMA PAUPERIS by CRAIG FRANCIS SZEMPLE. (mmh) (Entered: 06/03/2019) |
| 06/04/2019 | | REOPENING CASE: The Clerk is in receipt of the re 3 Application to Proceed IFP filed on 06/03/2019 and hereby reopens the case for review by a Judicial Officer. (sgf) (Entered: 06/04/2019) |
| 08/08/2019 | 4 | ORDER that Plaintiff shall submit a written statement within 30 days of this Order explaining why he failed to include the $7500 settlement on his *in forma pauperis* application. Signed by Judge Peter G. Sheridan on 08/08/2019. (jmh) (Entered: 08/08/2019) |
| 08/23/2019 | 5 | Letter regarding IFP filed from Craig Szemple. (jmh) (Entered: 08/23/2019) |
| 10/14/2019 | 6 | Application for Pro Bono Counsel by CRAIG FRANCIS SZEMPLE. (POREDA, MICHAEL) (Entered: 10/14/2019) |
| 10/15/2019 | | CLERK'S QUALITY CONTROL MESSAGE - Please be advised that the 6 Application for Pro Bono Counsel submitted by Michael Poreda was submitted incorrectly. Documents submitted by Pro Se Litigants must be mailed to the clerks office or submitted over the counter. If the intention for Michael Poreda is to represent the Plaintiff, a Notice of Appearance must be submitted by counsel on behalf of the Plaintiff. (jmh) (Entered: 10/15/2019) |
| 10/22/2019 | 7 | MEMORANDUM filed. Signed by Judge Peter G. Sheridan on 10/21/2019. (jmh) (Entered: 10/22/2019) |
| 10/22/2019 | 8 | ORDER that Plaintiff's *in forma pauperis* application is denied. It is further Ordered that the Clerk of the Court shall **administratively terminate this case** pending receipt of the $350 filing fee and $50 administrative fee. Signed by Judge Peter G. Sheridan on 10/21/2019. (jmh) (Entered: 10/22/2019) |
| 11/19/2019 | | Filing fee: $ 400, receipt number TRE107619 (mg) (Entered: 11/19/2019) |
| 11/20/2019 | | REOPENING CASE: The Clerk is in receipt of the re Filing Fee Received filed on 11/19/2019 and hereby reopens the case for review by a Judicial Officer. (dpw) (Entered: 11/20/2019) |
| 12/10/2019 | 9 | Order denying 6 application for Pro Bono Counsel for CRAIG FRANCIS SZEMPLE Signed by Magistrate Judge Douglas E. Arpert on 12/10/2019. (jmh) (Entered: 12/10/2019) |
| 01/06/2020 | 10 | 2nd MOTION for Appointment of Counsel filed by CRAIG FRANCIS SZEMPLE. (Attachments: # 1 Legal Argument, # 2 Affidavit, # 3 Envelope)(jmh) (Entered: 01/06/2020) |
| 01/06/2020 | | Set deadlines as to 10 MOTION to Appoint Pro Bono. Motion set for 2/3/2020 before Magistrate Judge Douglas E. Arpert. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an |

| 08/24/2020 | | Set Deadlines as to 22 MOTION to Appoint Counsel. Motion set for 9/21/2020 before Magistrate Judge Douglas E. Arpert. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (jmh) (Entered: 08/24/2020) |
|---|---|---|
| 09/30/2020 | 23 | ORDER denying Plaintiff's 22 Motion to Appoint Counsel without Prejudice. Signed by Magistrate Judge Douglas E. Arpert on 9/29/2020. (jmh) (Entered: 09/30/2020) |
| 12/07/2020 | 24 | SUMMONS Returned Executed by USMS as to RUTGERS UNIVERSITY served on 12/4/2020, answer due 12/28/2020. (jmh) (Entered: 12/07/2020) |
| 12/23/2020 | 25 | Summons Returned Unexecuted by USMS as to LATIFA FEDEI, APN. (jmh) (Entered: 12/23/2020) |
| 12/24/2020 | 26 | NOTICE of Appearance by THOMAS J. PYLE, JR on behalf of RUTGERS UNIVERSITY, UCHC (PYLE, THOMAS) (Entered: 12/24/2020) |
| 12/24/2020 | 27 | Application and Proposed Order for Clerk's Order to extend time to answer Attorney THOMAS J. PYLE, JR for RUTGERS UNIVERSITY,THOMAS J. PYLE, JR for UCHC added. (PYLE, THOMAS) (Entered: 12/24/2020) |
| 12/27/2020 | | Clerk`s Text Order - The document 27 Application for Clerk's Order to Ext Answer/Proposed Order submitted by RUTGERS UNIVERSITY, UCHC has been GRANTED. The answer due date has been set for 1/11/2021. (jmh) (Entered: 12/27/2020) |
| 01/11/2021 | 28 | ANSWER to Complaint with JURY DEMAND by RUTGERS UNIVERSITY, UCHC. (PYLE, THOMAS) (Entered: 01/11/2021) |
| 01/19/2021 | 29 | SCHEDULING ORDER: All discovery is to be concluded by 7/19/2021 and Any Dispositive Motions are due by 8/27/2021. Signed by Magistrate Judge Douglas E. Arpert on 1/19/2021. (jmh) (Entered: 01/19/2021) |
| 03/02/2021 | 30 | MOTION for Leave to File First Amended Complaint by CRAIG FRANCIS SZEMPLE. (Attachments: # 1 Memorandum in Support, # 2 Declaration & Proposed Azemended Complaint, # 3 Certificate of Service, # 4 Text of Proposed Order, # 5 Cover Letter, # 6 Envelope)(jmh) (Entered: 03/02/2021) |
| 03/02/2021 | | Set Deadlines as to 30 MOTION to Amend/Correct. Motion set for 4/5/2021 before Magistrate Judge Douglas E. Arpert. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (jmh) (Entered: 03/02/2021) |
| 03/11/2021 | 31 | SUMMONS Returned Executed as to SHARMALIE PERERA, M.D. by USMS. (jdb) (Entered: 03/11/2021) |
| 03/11/2021 | 32 | SUMMONS Returned Executed as to SANDRA CONNOLLY, M.D. by USMS. (jdb) (Entered: 03/11/2021) |
| 03/23/2021 | 33 | ANSWER to Complaint with JURY DEMAND by SANDRA CONNOLLY, M.D., SHARMALIE PERERA, M.D., RUTGERS UNIVERSITY.(PYLE, THOMAS) (Entered: 03/23/2021) |
| 03/31/2021 | 34 | SUMMONS Returned Executed by USMS. SANDRA CONNOLLY, M.D. served on 3/3/2021.(jmh) (Entered: 03/31/2021) |
| 03/31/2021 | 35 | SUMMONS Returned Executed by USMS. SHARMALIE PERERA, M.D. served on 3/3/2021. (jmh) (Entered: 03/31/2021) |

| 09/06/2022 | 47 | OPINION filed. Signed by Judge Peter G. Sheridan on 9/6/2022. (jdg) (Entered: 09/06/2022) |
|---|---|---|
| 09/06/2022 | 48 | ORDER denying 45 Motion to Dismiss without prejudice as improperly filed; and its is further ordered that the Clerk shall serve this Order and the accompanying Opinion upon Plaintiff by regular U.S. mail. Signed by Judge Peter G. Sheridan on 9/6/2022. (jdg) (Entered: 09/06/2022) |
| 09/06/2022 | | A copy of the 48 Order and 47 Accompanying Opinion was sent to Plaintiff via regular U.S mail on 9/7/2022 (jdg) (Entered: 09/06/2022) |
| 09/13/2022 | 49 | NOTICE of Change of Address by CRAIG FRANCIS SZEMPLE (Attachments: # 1 Envelope)(kht) (Entered: 09/13/2022) |
| 09/15/2022 | | CLERK'S QUALITY CONTROL MESSAGE - Case closed in Error, Please disregard. (jdg) (Entered: 09/15/2022) |
| 09/27/2022 | 50 | MOTION for Summary Judgment by SANDRA CONNOLLY, M.D., LATIFA FEDEI, APN, SHARMALIE PERERA, M.D.. (Attachments: # 1 Brief in support of motion for SJ, # 2 Statement Statement of Facts, # 3 Text of Proposed Order Order for Summary Judgment, # 4 Exhibit Exhibit A, # 5 Exhibit Exhibit B, # 6 Exhibit Exhibit C)(PYLE, THOMAS) (Entered: 09/27/2022) |
| 09/28/2022 | | Set deadlines as to 50 MOTION for Summary Judgment . Motion set for 11/7/2022 before Judge Peter G. Sheridan. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (jal, ) (Entered: 09/28/2022) |
| 10/21/2022 | 51 | CROSS MOTION to Appoint Pro Bono and to Adjourn Defendants' 50 Motion for Summary Judgment by CRAIG FRANCIS SZEMPLE. (Attachments: # 1 Cover Letter, # 2 Brief, # 3 Declaration, # 4 Proposed Order, # 5 Certificate of Service, # 6 Envelope)(jdg) (Entered: 10/21/2022) |
| 10/21/2022 | | Set Deadlines as to 51 CROSS MOTION to Appoint Pro Bono and to Adjourn Defendants' 50 Motion for Summary Judgment Motion set for 11/21/2022 before Magistrate Judge Douglas E. Arpert. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (jdg) (Entered: 10/21/2022) |
| 10/24/2022 | 52 | Mail Returned as Undeliverable. Mail sent to CRAIG FRANCIS SZEMPLE (kht) (Entered: 10/24/2022) |
| 11/07/2022 | 53 | RESPONSE in Opposition filed by LATIFA FEDEI, APN re 51 MOTION to Appoint Pro Bono (PYLE, THOMAS) (Entered: 11/07/2022) |
| 02/14/2023 | 54 | ORDER administratively terminating 50 motion for summary judgment pending the ruling of Plaintiff's 51 motion for pro bono. Signed by Judge Peter G. Sheridan on 2/14/2023. (jal, ) (Entered: 02/14/2023) |
| 05/02/2023 | | Set/Reset Hearings: Conference (Re: Consolidation of Civ. 19-13300) set for 5/22/2023 at 1:00 PM by Teleconference before Judge Peter G. Sheridan. Dial in number is: (888-684-8852 Code: 1757868#). (dh, ) (Entered: 05/02/2023) |
| 05/02/2023 | 55 | APPLICATION and ORDER for Writ of Habeas Corpus for a Telephone Conference Hearing on 5/22/2023 at 1:00 p.m. Signed by Judge Peter G. Sheridan on 5/2/2023. (jdg) (Entered: 05/02/2023) |

| 08/16/2023 | | Case 3:19-cv-18300-ZNQ-JEQ   Document 90   Filed 07/17/24   Page 72 of 75 PageID: 705 Telephone Status Conference held on 8/16/2023. (eh, ) (Entered: 08/17/2023) |
|---|---|---|
| 08/23/2023 | 66 | TEXT ORDER: The Court will conduct a Telephone Status Conference on 9/19/2023 at 12:30 PM. Counsel for Defendant is to set up and initiate the call to chambers 609-989-2144. So Ordered by Magistrate Judge Douglas E. Arpert on 8/23/2023. (eh, ) (Entered: 08/23/2023) |
| 08/25/2023 | 67 | NOTICE of Appearance by GARY L. RIVELES on behalf of SANDRA CONNOLLY, M.D., LATIFA FEDEI, APN, SHARMALIE PERERA, M.D., RUTGERS UNIVERSITY, THE STATE OF NEW JERSEY, UCHC (RIVELES, GARY) (Entered: 08/25/2023) |
| 08/25/2023 | 68 | NOTICE of Appearance by ANELIA DIKOVYTSKA BROWN on behalf of SANDRA CONNOLLY, M.D., LATIFA FEDEI, APN, SHARMALIE PERERA, M.D., RUTGERS UNIVERSITY, THE STATE OF NEW JERSEY, UCHC (BROWN, ANELIA) (Entered: 08/25/2023) |
| 08/25/2023 | 69 | NOTICE of Appearance by ETHAN JOSHUA LILLIANTHAL on behalf of SANDRA CONNOLLY, M.D., LATIFA FEDEI, APN, SHARMALIE PERERA, M.D., RUTGERS UNIVERSITY, THE STATE OF NEW JERSEY, UCHC (LILLIANTHAL, ETHAN) (Entered: 08/25/2023) |
| 09/19/2023 | | TEXT Minute Entry for proceedings held before Magistrate Judge Douglas E. Arpert: Telephone Status Conference held on 9/19/2023. (eh, ) (Entered: 09/19/2023) |
| 09/20/2023 | 70 | TEXT ORDER: The Court will conduct a Telephone Status Conference on 10/25/2023 at 02:30 PM. Counsel for Defendant is to set up and initiate the call to chambers 609-989-2144. So Ordered by Magistrate Judge Douglas E. Arpert on 9/20/2023. (eh, ) (Entered: 09/20/2023) |
| 09/30/2023 | 71 | TEXT ORDER: PLEASE NOTE TIME CHANGE - The Court Telephone Status Conference on 10/25/2023 will be conducted at 2:00PM. Counsel for Defendant is to set up and initiate the call to chambers 609-989-2144. So Ordered by Magistrate Judge Douglas E. Arpert on 9/30/2023. (eh, ) (Entered: 09/30/2023) |
| 10/25/2023 | | TEXT Minute Entry for proceedings held before Magistrate Judge Douglas E. Arpert: Telephone Status Conference held on 10/25/2023. (eh, ) (Entered: 11/02/2023) |
| 01/02/2024 | 72 | TEXT ORDER: The Court will conduct a Telephone Status Conference on 1/8/2024 at 10:30 AM. Counsel for Defendant is to set up and initiate the call to chambers 609-989-2144. So Ordered by Magistrate Judge Douglas E. Arpert on 1/2/2023. (eh, ) (Entered: 01/02/2024) |
| 01/08/2024 | | TEXT Minute Entry for proceedings held before Magistrate Judge Douglas E. Arpert: Telephone Status Conference held on 1/8/2024. (eh, ) (Entered: 01/08/2024) |
| 01/08/2024 | 73 | TEXT ORDER: The parties are to submit a joint status report 2/9/2024. So Ordered by Magistrate Judge Douglas E. Arpert on 1/8/2024. (eh, ) (Entered: 01/08/2024) |
| 05/09/2024 | 74 | STATUS REPORT by RUTGERS UNIVERSITY, UNIVERSITY CORRECTIONAL HEALTH CARE. (PELLITTA, NICHOLAS) (Entered: 05/09/2024) |
| 05/13/2024 | 75 | TEXT ORDER: A Status Conference via telephone is set for 6/27/2024 at 11:30 a.m. before Magistrate Judge Tonianne J. Bongiovanni. Kindly mark your calendars accordingly. The Court shall circulate dial-in information for the telephone conference at a later date. So Ordered by Magistrate Judge Tonianne J. Bongiovanni on 5/13/2024. (jem) (Entered: 05/13/2024) |

# EXHIBIT "F"

ATTORNEYS AT LAW

JOHN M. BLUME
(1932-2020)
CAROL L. FORTE ♦
MICHAEL B. ZERRES ♦
JOHN E. MOLINAR I ♦
MITCHELL J. MAKOWICZ, JR. ♦
JEFFREY J. ZENNA ♦
KENNETH W. ELWOOD ♦
HARRIS S. FELDMAN♦
RICHARD J. VILLANOVA ♦
NORBERTO A. GARCIA♦
ABRAHAM N. MILGRAUM
ROBIN A. DONATO
CONNOR C. TURPAN
BRIAN M. RIEHL
RICHARD T. MADURSKI
TERRENCE J. HULL
_____
Of Counsel
RONALD P. GOLDFADEN ♦
CYNTHIA M. CRAIG
BRIAN E. MAHONEY
DAVID M. FRIED ♦
FREDERICK D. MICELI♦

♦   Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

## BLUME FORTE FRIED ZERRES & MOLINARI

### A PROFESSIONAL CORPORATION

ONE MAIN STREET
CHATHAM, NEW JERSEY 07928

WWW.NJATTY.COM

(973) 635-5400
FAX: (973) 635-9339

OTHER  OFFICES:
JERSEY CITY, NJ 07306
NORTH BERGEN, NJ 07047
SEA GIRT, NJ 08750

June 26, 2024

**VIA EMAIL**
U.S.M.J. Justin T. Quinn, U.S.D.J.
Clarkson S. Fisher Building
& U.S. Courthouse
402 East State Street
Trenton, NJ 08608

RE:   **Szemple v. Rutgers University, et al.**
Case No.: 3:19-cv-12746 & 3:19-cv-13300
Our File No.: 2301851

Dear Magistrate Quinn:

I was appointed by the Court to represent the *Pro Se* Plaintiff in this matter in a limited capacity on two discrete legal issues.  The first was to advise the plaintiff on the feasibility of obtaining an Affidavit of Merit in this case. The second was to review the matter, consult with the *Pro Se* Plaintiff, and then advise the Court why one of the two related cases should not be dismissed as duplicative. (3:19-cv-13300 and 3:19-cv-12746) I have conferred with Plaintiff several times, and as the Court is aware I am presently attempting to obtain a complete set of the relevant institutional and medical records so that I can advise the plaintiff on the Affidavit of Merit issue.

At the same time, I have spoken to the *Pro Se* Plaintiff regarding the two related matters and have determined with his assistance that while there is substantial overlap between the two claims, they do raise separate factual



## BLUME FORTE FRIED ZERRES & MOLINARI

### A PROFESSIONAL CORPORATION

contentions and implicate different legal issues. With that in mind, the *Pro Se* Plaintiff has advised that he will consent to consolidating the matters in order to streamline the litigation for the Court and the parties involved. Unless there is objection by one of the parties, I ask that the Court enter an order consolidating the matters to alleviate the necessity for motion practice.

Respectfully Submitted,

HARRIS S. FELDMAN

HSF/rd